**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE SEP 2 2 2016

CHIEF JUSTICE

This opinion was filed for record
at 8 00 am on Sept 22, 2016
SUSAN L. CARLSON
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF RICHLAND, | ) | |
| | ) | |
| Respondent, | ) | No. 92594-1 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| BRIANA WAKEFIELD, | ) | |
| | ) | Filed _____ SEP 2 2 2016 _____ |
| Petitioner. | ) | |
| | ) | |
| CITY OF KENNEWICK, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIANA WAKEFIELD, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | |

OWENS, J. — Benton County District Court ordered petitioner Briana Wakefield to pay $15 each month toward her outstanding legal financial obligations (LFOs). Wakefield is homeless, disabled, and indigent. Her only income is $710 in social security disability payments each month, and as a result, she struggles to meet her

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

own basic needs. Wakefield and amici ask this court to reverse the district court's order and hold that the current practice of strict LFO enforcement against homeless, disabled, and indigent people in Benton County violates state and federal statutes. Because the district court's order was contrary to both the law and the evidence in the record, we reverse. Under state law, LFOs should be imposed only if an individual has a present or future ability to pay, and LFOs may be remitted when paying them would impose a manifest hardship on the person. In this case, Wakefield has no present or future ability to pay LFOs. She already struggles to obtain basic needs such as secure housing, food, and medical care. Both parties agree that ordering Wakefield to pay would impose a manifest hardship on her and that her LFOs should be remitted. However, both parties also request that we issue an opinion on the merits to provide guidance to parties in the future. Pursuant to our analysis below, we order that her LFOs be remitted.

## FACTS

Wakefield had a difficult childhood. Her parents were both addicts, and her father was abusive. She entered the foster care system at the age of 14. At the age of 18, she began receiving social security income because she is unable to work due to her permanent disabilities, which include bipolar disorder, attention deficit hyperactivity disorder, and posttraumatic stress disorder. Her monthly social security

*Richland/Kennewick v. Wakefield*
No. 92594-1

disability payment has been her only income, although she also receives about $170 in food stamps assistance from the State. At this time, she is 27 years old.

She has four children who are in foster care, and she is currently involved in a dependency action. She testified that she is actively working to comply with the dependency court's order, which includes seeing a mental health counselor once every other week, seeing a drug counselor every week, attending Narcotics Anonymous meetings two to three times a week, visiting her children three times a week for three-hour visits, and taking parenting classes. She is also attempting to find stable housing.

Wakefield has three low level misdemeanor convictions: theft (2009), disorderly conduct (2010), and harassment (2012). Wakefield is specifically challenging the discretionary costs imposed as a result of the latter two convictions. She is not challenging fines or nondiscretionary LFOs.[1] Wakefield acknowledges that she did not appeal the costs imposed as part of her judgment and sentence, and thus she is not challenging the original decision imposing those costs.

The parties agree that Wakefield has not been making monthly payments on these outstanding costs (although she has intermittently made a couple of small payments over the years), and the district court scheduled a fine review hearing, which is essentially a contempt proceeding. Wakefield moved to remit the costs

---

[1] The district court's repeated references to Wakefield's LFOs as "fines" during the fine review hearing were incorrect; only discretionary costs are at issue. Clerk's Papers at 239-42.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

pursuant to RCW 10.01.160(4) because she did not have the ability to pay, and because being forced to pay would create a manifest hardship for her and her family. The cities were not contacted about the fine review hearing and did not appear. The only attendees were Wakefield, her attorney, and her expert witness.

At the fine review hearing, Wakefield testified with regard to her current situation. She explained that she is homeless and that she does not have enough money to pay her LFOs, despite minimizing her expenses as much as possible. She recounted her expenses for the past few months and explained how she spends her monthly $710 on her basic needs (or at least attempting to meet her basic needs).

Wakefield also presented testimony from expert witness Dr. Diana Pierce, a professor at the University of Washington School of Social Work. Dr. Pierce testified regarding her research calculating "self-sufficiency standards," which are measurements of "the minimum amount of money you need to adequately meet your basic needs." Clerk's Papers (CP) at 78. These standards include the resources needed to meet only "the core necessities of life, such as clothing, food, shelter and medical care at a decent level." *Id.* at 188. Dr. Pierce explained, "To be below this minimum means the inability to secure even the basic necessities with one's own resources, and be forced to sacrifice one need for another, e.g., not eat in order to pay for heat, or be forced to rely on luck, on the uncertainty of the kindness of others." *Id.* It does not include "recreation, entertainment, savings, debt repayment, or any other

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

needs beyond the inescapable daily needs of basic human existence." *Id.* at 189.

Dr. Pierce testified that the self-sufficiency standard in 2011 for a one person

household in Kennewick or Richland is $1,492 per month. Dr. Pierce testified that

Wakefield's monthly income falls well below that self-sufficiency standard and that

"she can't even meet her basic needs at a bare bones level." *Id.* at 85. Based on her

experience and the facts of this case, Dr. Pierce stated that ordering Wakefield to pay

court costs would be ordering Wakefield to "put her basic survival needs aside." *Id.*

at 192.

Since the cities were not present at the hearing, the district court judge actively

questioned all witnesses. She summarized her understanding of the law in her ruling,

stating that "the caselaw doesn't say just because she's indigent or just because she

has trouble meeting basic needs that she's excused from the penalty." *Id* at 107. The

judge then ordered Wakefield to participate in work crew and to pay $15 each month.

At no point did the court make an explicit finding that Wakefield was able to make the

payments. Nor did the court mention or apply the manifest hardship standard for

remitting costs for indigent defendants.

Wakefield appealed to Benton County Superior Court. The superior court

remanded to the district court for entry of "findings setting forth the reasons and facts

which led the [court] to enter these orders." *Id.* at 237. The district court entered 16

findings of fact and 5 conclusions of law.

*Richland/Kennewick v. Wakefield*
No. 92594-1

Wakefield challenges many of those findings of fact because they are not supported by substantial evidence. The key findings of fact at issue in this case are:

3.     Ms. Wakefield currently receives SSI [(social security income)] and other state funded benefits.

4.     There was no evidence presented that Ms. Wakefield has a permanent disability that prevents her from working.

. . . .

14.     Her continuing criminal activity, failure to do court ordered treatment and continued drug use are life style choices she made that negatively impacted the amount of money that Ms. Wakefield had available to pay her fines and demonstrate willfulness on her part.

. . . .

16.     The defendant stated that her income would prohibit her from paying fines but did not testify to any bona fide efforts she has made to be current in her fine payments.

*Id.* at 240-41.

The superior court reviewed the district court decision for (1) errors of law and (2) whether the factual findings were supported by substantial evidence in the record. The superior court upheld most of the district court's ruling, with the exception of the work crew requirement. The superior court reversed the imposition of work crew because there had been no finding that Wakefield willfully failed to make payments. Thus, the work crew requirement is not in front of us.

Wakefield sought discretionary review from the Court of Appeals. The Court of Appeals certified the case to us, and the commissioner accepted certification.

6

Amicus briefs in support of Wakefield were filed by the attorney general, the

American Civil Liberties Union Foundation of Washington, and the National Alliance

on Mental Illness—Washington.

After the briefs were filed, respondents city of Richland and city of Kennewick

filed a motion to strike oral argument, and to remand the case to the trial court for

entry of an order remitting Wakefield's LFOs. The cities pointed to their special

ethical obligations as prosecuting attorneys and, in particular, the "duty to concede

error when an asserted legal position is no longer tenable." Mot. To Strike Oral Arg.

& for Remand To Trial Court To Remit LFOs at 2-3. They were convinced that

"there is no good faith legal argument to be made in opposition to Ms. Wakefield's

requests for a remand to vacate the restart order entered on August 20, 2013, and for

entry of an order remitting her remaining LFOs." *Id.* at 3. We granted the request to

strike oral argument. The cities requested that we nonetheless issue an opinion on the

merits. They explained that such an opinion would "avoid similarly situated

individuals from experiencing the stress and uncertainty caused by [the] trial court's

order and the subsequent litigation." *Id.* We agree and issue this opinion on the

merits of the case.

## ISSUES

1.     Did the district court's order violate the statutory standard for remission

of LFOs?

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

2.      Did the district court fail to properly analyze Wakefield's specific financial situation when evaluating the remittance motion?

3.      Did the district court's order violate the antiattachment provisions of the Social Security Act, 24 U.S.C. §§ 301 to 1397 mm?

4.      Was the district court's order based on findings of fact that were not supported by substantial evidence?

ANALYSIS

Our review of district court rulings is governed by the Rules for Appeal of Decisions of Courts of Limited Jurisdiction (RALJ). *See State v. Ford*, 110 Wn.2d 827, 829-30, 755 P.2d 806 (1988). We review the district court's ruling for errors of law. RALJ 9.1(a). Findings of fact made by the district court are accepted if they are supported by substantial evidence in the record. RALJ 9.1(b).

Wakefield asks that we reverse the district court's order to pay $15 per month toward her LFOs and hold that the strict LFO enforcement in Benton County violates state and federal statutes. Specifically, she argues that the district court made multiple errors of law when finding she had the ability to pay $15 each month, the district court failed to properly analyze her disabilities and financial situation, the district court's order violated the antiattachment provisions of the Social Security Act, and the district

8

*Richland/Kennewick v. Wakefield*
No. 92594-1

court's findings of fact were not supported by substantial evidence.[2] We address each argument in turn.

1.     *The district court did not apply the correct statutory standard*

Since Wakefield was unable to pay her outstanding costs, she moved for her costs to be remitted under RCW 10.01.160(4). We have little case law on this statutory provision, which allows defendants who have been ordered to pay costs to "at any time petition the sentencing court for remission of the payment of costs or of any unpaid portion thereof," provided that they are not willfully in default. RCW 10.01.160(4). "If it appears to the satisfaction of the court that payment of the amount due will impose *manifest hardship* on the defendant or the defendant's immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170." *Id.* (emphasis added).

In this case, the district court failed to consider or apply the "manifest hardship" standard expressly adopted by the legislature in RCW 10.01.160(4). Without regard to whether paying costs would cause Wakefield and her family manifest hardship, the district court judge found that Wakefield had some ability to pay her fines, and ordered her to begin paying $15 per month. By failing to recognize or apply the correct standard, the district court committed reversible error. In a typical

---

[2] Wakefield also argues that the fine review hearing violated her procedural due process rights. CONST. art. I, § 3. Because we vacate and reverse the district court's order on other grounds, we decline to reach her due process claim.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

case, we might remand for the district court to apply the proper standard. However, in this case, both parties agree that we should remand to the district court for entry of an order remitting the outstanding LFOs at issue. Therefore, we so order.

2.   *The district court failed to properly analyze the effect of Wakefield's disabilities and homelessness*

Although the parties agree that the case should be remanded for entry of an order remitting Wakefield's costs, both parties ask that we nonetheless issue an opinion on the merits to provide more certainty to affected parties in the future. Accordingly, we also address Wakefield's claims regarding the impact of her disabilities and homelessness on her ability to pay.

First, we find that it was legal error to disregard whether Wakefield could currently meet her own basic needs when evaluating her ability to pay. Such information is crucial to determine whether paying LFOs would create a "manifest hardship" for Wakefield. While the term "manifest hardship" is undefined in the statute, it is difficult to see how being unable to provide for one's own basic needs—food, shelter, basic medical expenses—would not meet that standard. A person's present inability to meet their own basic needs is not only relevant, but crucial to determining whether paying LFOs would create a manifest hardship.

Second, we reiterate our instruction from *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015): courts can and should use GR 34 as a guide for determining whether someone has an ability to pay costs. GR 34 is a court rule designed to simplify the

process for determining whether a person is indigent for purposes of court and clerk's fees and charges in civil cases. Under GR 34, "courts must find a person indigent if the person establishes that he or she receives assistance from a needs-based, means-tested assistance program, such as Social Security or food stamps." *Id.* at 838. Similarly, "courts must find a person indigent if his or her household income falls below 125 percent of the federal poverty guideline." *Id.* at 838-39. As we have previously held, and as we again hold today: "[I]f someone does meet the GR 34 standard for indigency, courts should seriously question that person's ability to pay LFOs." *Id.* at 839. This is true for both the imposition and enforcement of LFOs. The district court should not have disregarded Wakefield's eligibility for needs-based, means-tested assistance when evaluating her ability to pay LFOs. Instead, courts should regard such eligibility as strong evidence of indigency.

Finally, we must reiterate the particularly punitive consequences of LFOs for indigent individuals that this court discussed in *Blazina*: "[O]n average, a person who pays $25 per month toward their LFOs will owe the State more 10 years after conviction than they did when the LFOs were initially assessed." *Id.* at 836. Given this reality, trial courts should be cautious of imposing such low payment amounts in the long term for impoverished people. For individuals like Wakefield, who show no prospects of any change in their ability to pay, it is unjustly punitive to impose payments that will only cause their LFO amount to increase. Therefore, such low

payments should be generally ordered only for short-term situations. If a person has no present or future ability to pay amounts that will actually pay off their LFOs, remission in accordance with RCW 10.01.160(4) is a more appropriate and just option.

> 3.    *The district court's order violated the antiattachment provisions of the Social Security Act*

Wakefield also challenges the court's order under federal law. Under the Social Security Act, "none of the moneys paid" as part of social security disability benefits "shall be subject to execution, levy, attachment, garnishment, *or other legal process*, or to the operation of any bankruptcy or insolvency law." 42 U.S.C. § 407(a) (emphasis added). Wakefield argues that the district court's order violated this provision because it legally requires her to make a payment from her social security disability benefits. She reasons that since she has no other income, there is no other source from which her LFOs could be paid.

Wakefield is correct. The United States Supreme Court has already rejected prior state attempts to recoup money from social security disability recipients, even after the money has been deposited in a bank. In *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 417, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973), the Supreme Court rejected a State's attempt to obtain funds from an individual's trust account because the funds had come from social security disability payments. In that case, the individual had signed an agreement with the state government to repay state disability

12

payments if he later acquired funds. *Id.* at 414. The Supreme Court found that funds from social security disability payments retain their quality as protected benefits even after being deposited, and that they were protected from "the use of any legal process," including claims from state governments. *Id.* at 417. The Supreme Court similarly rejected a state attempt to attach the social security benefits of prisoners to pay for the cost of imprisonment. *Bennett v. Arkansas*, 485 U.S. 395, 397, 108 S. Ct. 1204, 99 L. Ed. 2d 455 (1988).

Based on these Supreme Court cases, courts in Montana and Michigan have held that states cannot order individuals to pay LFOs such as restitution from social security disability benefits. *See In re Lampart*, 306 Mich. App. 226, 856 N.W.2d 192 (2014); *State v. Eaton*, 323 Mont. 287, 293, 99 P.3d 661 (2004). The Montana Supreme Court went further and held that a defendant's social security disability income could not be included in a person's total income for purposes of calculating the monthly amount he could pay, as it would "improperly burden[] his social security benefits." *Eaton*, 323 Mont. at 293.

These courts have rejected the view that the antiattachment provisions prohibit only direct attachment and garnishment, and have instead held that a court ordering LFO payments from a person who receives only social security disability payments is an "other legal process" by which to reach those protected funds. This comports with the Supreme Court's key ruling on the definition of "other legal process," which

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

explained that it is a process that involves "some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability." *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003). In this case, the court ordered Wakefield to turn over $15 from her social security disability payments each month. That meets the Supreme Court's definition of "other legal process." Accordingly, we hold that federal law prohibits courts from ordering defendants to pay LFOs if the person's only source of income is social security disability.

> 4. *The district court's order was based on findings of fact that were not supported by substantial evidence*

Finally, Wakefield challenges a number of the trial court's findings of fact. District court findings of fact must be supported by substantial evidence in the record. RALJ 9.1(b). We focus on three particularly problematic findings.

> a. *The District Court Judge Erroneously Found That There Was "No Evidence" That Wakefield Had a Disability That Prevents Her from Working*

The district court judge made two contradictory findings of fact regarding Wakefield's disability. She found that "Ms. Wakefield currently receives SSI," but she also found that "[t]here was no evidence presented that Ms. Wakefield has a permanent disability that prevents her from working." CP at 240. These two findings

14

are contradictory. The fact that Wakefield qualifies for social security disability *is* evidence that Wakefield has a permanent disability that prevents her from working. Therefore, we strike this finding of fact. Courts must give evidentiary weight to findings by the Social Security Administration regarding an individual's disability and whether it prevents them from working.

### b. The District Court Judge Erroneously Found That Wakefield's "Life Choices" Caused Her Poverty

The district court judge found that Wakefield did not have money to pay her fines because of her "life style choices." *Id.* The judge identified these choices as "continuing criminal activity, failure to do court ordered treatment and continued drug use." *Id.* There is no evidence to support this finding of fact and, therefore, we strike it.

Most importantly, as Wakefield's attorneys point out, there is nothing in the record that connects her indigency with her drug addiction or misdemeanor convictions for theft, harassment, and disorderly conduct. Nothing in the record indicates how Wakefield would no longer be indigent if she did not have addiction issues or prior convictions. Instead, the record shows that Wakefield is completely disabled and unable to work due to her multiple mental disabilities, and that this inability to earn income results in her poverty. Wakefield did not make the "life style choice" to be mentally disabled. Moreover, the record does not show that her criminal and addiction issues were "continuing." The record contains no evidence that she

continued to engage in any criminal activity after she served her time, and while Wakefield admitted to being a recovering addict, she had been sober for 75 days at the time of the hearing. Findings of fact must be based on evidence, and in this case, there was no evidence in the record to support the judge's finding.

### c. The District Court Judge Erroneously Found That Wakefield Had Not Made Bona Fide Efforts To Pay Her LFOs

The district court judge found that "[t]he defendant stated that her income would prohibit her from paying fines but did not testify to any bona fide efforts she has made to be current in her fine payments." *Id.* at 241. This finding is not supported by substantial evidence in the record.

Wakefield testified that she has been receiving social security disability since she was 18. In her declaration, she explained, "I have very little family as I grew up in foster care. I do not have a support system." *Id.* at 167. She was asked at the fine review hearing, "[I]s there anyone that would lend you $50 a month to pay?" *Id.* at 60-61. Wakefield responded, "No. What little support system I do have, they live paycheck to paycheck." *Id.* at 61. There is no evidence in the record of any other potential source of funds Wakefield could make "bona fide efforts" to use. Therefore, this finding of fact is not supported by the evidence in the record.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Richland/Kennewick v. Wakefield*
No. 92594-1

## CONCLUSION

We vacate the district court's order because it was contrary to both state and federal law regarding LFO enforcement against indigent and disabled people. We remand for entry of an order remitting the LFOs at issue.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Richland/Kennewick v. Wakefield*
No. 92594-1

Owens, J.

WE CONCUR:

Johnson, J.

Wiggins, J.

González, J.

Fairhurst, J.

Gordon McCloud, J.

Stephens, J.

Yu, J.

*City of Richland v. Wakefield; City of Kennewick v. Wakefield*

No. 92594-1

MADSEN, C.J. (concurring)—I agree with the majority that in this action under RCW 10.01.160(4) for remission of discretionary costs that were imposed as part of Briana Wakefield's judgment and sentence, the trial court committed reversible error by failing to consider whether enforced payment of such legal financial obligations (LFOs) would impose "manifest hardship" on defendant. *See* majority at 9-10. I further agree that in this remission action, the trial court erred in disregarding defendant's eligibility for "needs-based, means-tested assistance" when evaluating her ability to pay. *See* majority at 10-11 (discussing GR 34 and *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015)). These state law considerations resolve this case, and the majority's discussion of these state law matters provides sufficient guidance for resolution of future similar remission actions under RCW 10.01.160(4). Accordingly, in my view, this court need not address federal law concerning the protected status of Social Security disability benefits to resolve this case. Thus, the majority's discussion in Part 3 concerning such matters is unnecessary; it is also questionable and may have unintended consequences.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 92594-1
Madsen, C.J., concurring

In Part 3, the majority cites with approval a Montana Supreme Court decision that purportedly interprets federal protections for Social Security disability benefits to mean that such benefits may not be included when a court considers a person's total income for purposes of calculating the monthly amount he could pay in LFOs. *See* majority at 13 (citing *State v. Eaton*, 323 Mont. 287, 293, 99 P.3d 661 (2004)). But another state court has held that Social Security benefits "may be considered" by a trial court in determining a defendant's total financial picture and his ability to pay restitution. *Kays v. State*, 963 N.E.2d 507, 510-11 (Ind. 2012). Further, consistent with the notion that consideration of Social Security monies is not prohibited when assessing a person's total financial picture and ability to pay LFOs, another state court has held that "social security benefits that are reasonably traceable retain their exemption even if they are commingled with other nonexempt funds in the same bank account," *In re Estate of Merritt*, 272 Ill. App. 3d 1017, 1021, 651 N.E.2d 680 (1995); and at least one federal district court has acknowledged that there is case law support for the proposition that nonexempt funds, even if commingled with Social Security benefit monies, are not protected from levy or attachment. *See Smith v. Accenture U.S. Grp. Long-Term Disability Ins. Plan*, No. 05 C 5942, 2006 WL 2644957 at *4 (N.D. Ill. Sept. 13, 2006) (court order) (citing *Merritt* and *Dionne v. Bouley*, 757 F.2d 1344 (1st Cir. 1985)).

As can be seen, the reach of federal protections for Social Security disability benefits and how such protections may affect the trial court's calculation affecting availability of nonprotected funds is debatable, and, as noted, we need not resolve such

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 92594-1
Madsen, C.J., concurring

issues to decide this case. Because the majority's discussion in Part 3 approves an expansive reading of federal protection for Social Security benefits that is questionable and may yield unintended consequences in a future case, and is not necessary to resolve the present case, I do not support Part 3 of the majority opinion.

With these observations, I concur.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 92594-1
Madsen, C.J., concurring

Madsen, C.J.

4