IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34221-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSE LUIS AGUILAR, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Following Jose Aguilar's 2014 convictions for second degree murder and first degree rape of a child, the trial court imposed a sentence that included $34,718.97 in discretionary legal financial obligations (LFOs). In 2016, Mr. Aguilar moved the trial court to terminate those LFOs on the basis that he never received the requisite inquiry into his ability to pay as required by *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). The trial court held a new sentencing hearing and found Mr. Aguilar had a minimal present ability to pay the LFOs. Mr. Aguilar appeals, arguing the trial court's finding was clearly erroneous. We agree and remand for the trial court to strike the discretionary LFOs.

FACTS

In July 2014, Mr. Aguilar pleaded guilty to second degree murder and first degree rape of a child. On September 24, 2014, the trial court imposed consecutive sentences of 357 months (for second degree murder) and 123 months to life (for first degree rape of a child). Mr. Aguilar was 37 years old at the time of the sentencing hearing.

The trial court also imposed $35,518.97 in LFOs. Of that sum, $34,718.97 were discretionary costs, which included a $60.00 sheriff's service fee, a $14,496.35 court-appointed attorney fee, and a $20,162.62 "special costs reimbursement" fee. Clerk's Papers (CP) at 16 (capitalization omitted). The judgment and sentence did not contain a finding that Mr. Aguilar had the ability to pay the LFOs, nor did the trial court conduct an on-the-record inquiry into Mr. Aguilar's financial resources or ability to pay. The court also ordered $2,189.44 in restitution. There is no evidence in the record that Mr. Aguilar ever appealed from the 2014 judgment and sentence.

On January 20, 2016, Mr. Aguilar filed a motion in the trial court "to terminate legal financial obligation(s)." CP at 21 (capitalization omitted). Citing RCW 10.01.160(3) and *Blazina*, 182 Wn.2d 827, Mr. Aguilar argued he never received the requisite inquiry into his ability to pay and asked the court to waive his discretionary LFOs. Mr. Aguilar attached a summary of his LFO account to his motion.

2

The State responded that terminating the LFOs was not the proper remedy, but requested a new sentencing hearing so the court could comply with *Blazina*. The trial court agreed and ordered that

> a new sentencing hearing will be held to ensure compliance by the court with [*Blazina*], including that the court makes an individualized inquiry into the defendant's current and future ability to pay before the court imposes legal financial obligations and that said inquiry shall include the court's consideration of important factors, such as incarceration and the defendant's other debts, including restitution, relative to determine the defendant's ability to pay.

CP at 28. Citing the remission statute, the trial court also agreed to treat Mr. Aguilar's motion in part as a motion to remit his LFOs, provided Mr. Aguilar brought additional evidence to support his request.

At the hearing, Mr. Aguilar stated his main issue was that the Department of Corrections garnished 75 percent of the wages he earned while incarcerated. He stated his gross monthly income was $150.00, but his net income was only $40.00 after the garnishment. The State responded that Mr. Aguilar had already paid $193.99 toward his LFOs, which indicated he had the ability to pay the remaining amount.

The trial court found that Mr. Aguilar had a "minimal" present ability to repay his LFOs, and that it did not "see a problem taking 75 percent of [h]is earnings from jail." Report of Proceedings (RP) (Feb. 18, 2016) at 3. The trial court further concluded it

3

would be inappropriate to address or eliminate Mr. Aguilar's LFOs while he remained

incarcerated, but stated it would consider Mr. Aguilar's request when he is released from

prison.

The trial court then modified the judgment and sentence to contain the following

findings:

> . . . The court finds that the defendant may have the future ability to
> pay the legal financial obligations imposed herein. RCW 9.94A.753. He
> has minimal ability to currently pay.
> . . . .
> . . . It is appropriate to re-address the LFO issue when [defendant] is
> released from custody.

CP at 34. Mr. Aguilar timely appealed.

## ANALYSIS

Mr. Aguilar argues the trial court erred in finding he has the current or future

ability to pay his discretionary LFOs.

Mr. Aguilar filed his motion challenging his LFOs 16 months after the trial court

entered the obligations. Ordinarily, this would preclude Mr. Aguilar from challenging the

2014 sentencing court's decision imposing those costs. *See In re Pers. Restraint of*

*Flippo*, 187 Wn.2d 106, 110-11, 385 P.3d 128 (2016) (holding that LFO errors do not

render a judgment and sentence facially invalid for purposes of RCW 10.73.090(1), nor

was *Blazina* a significant change in the law requiring retroactive application under

4

RCW 10.73.100(6)). Because there is no record Mr. Aguilar ever appealed the 2014

judgment and sentence, it became final the date it was entered and the trial court could

have treated Mr. Aguilar's January 2016 motion solely as a motion to remit costs under

RCW 10.01.160(4). *See City of Richland v. Wakefield*, 186 Wn.2d 596, 601, 380 P.3d

459 (2016) ("Wakefield acknowledges that she did not appeal the costs imposed as part of

her judgment and sentence, and thus she is not challenging the original decision imposing

those costs."). However, because the trial court ordered a new sentencing hearing for the

purpose of determining Mr. Aguilar's ability to pay, Mr. Aguilar is entitled to review of

that decision.[1]

RCW 10.01.160(3) provides in part that a court "shall not order a defendant to pay

costs unless the defendant is or will be able to pay them." Under the plain language of

this provision, a sentencing court does not have authority to order a defendant to pay costs

unless the defendant is or will be able to pay them, after taking into account the

---

[1] The State appears to argue, citing *State v. Crook*, 146 Wn. App. 24, 189 P.3d 811 (2008), that Mr. Aguilar's claim is not ripe because the State has not yet attempted to enforce payment. The *Blazina* court rejected this argument. *See Blazina*, 182 Wn.2d at 832 n.1. Moreover, *Crook* involved an appeal from a motion for remission of payment under RCW 10.01.160(4)—it did not involve the question of whether the trial court complied with RCW 10.01.160(3) in imposing discretionary LFOs. *See Crook*, 146 Wn. App. at 27.

5

defendant's financial resources. *In re Pers. Restraint of Dove*, 196 Wn. App. 148, 158, 381 P.3d 1280 (2016).

A trial court's finding that the defendant has the ability to pay LFOs is essentially factual and this court reviews this finding under the clearly erroneous standard. *State v. Bertrand*, 165 Wn. App. 393, 404 n.13, 267 P.3d 511 (2011). A finding of fact is clearly erroneous when, "'although there is some evidence to support it, review of all of the evidence leads to a definite and firm conviction that a mistake has been committed.'" *State v. Lundy*, 176 Wn. App. 96, 105, 308 P.3d 755 (2013) (internal quotation marks omitted) (quoting *Schryvers v. Coulee Cmty. Hosp.*, 138 Wn. App. 648, 654, 158 P.3d 113 (2007)).

Here, a review of all the evidence meets this standard. Mr. Aguilar will be in prison at least until his mid-70s. The trial court imposed $34,718.97 in discretionary LFOs. This amount began accruing interest at a 12 percent rate when the trial court entered the judgment and sentence in September 2014. *See* RCW 10.82.090(1); RCW 4.56.110(4); RCW 19.52.020(1). Mr. Aguilar's LFO account summary shows that by November 2015, $4,992.04 had accrued in interest, for a total balance of $40,225.00 (not including restitution).

The State contends Mr. Aguilar earns approximately $150 per month while incarcerated. But this is just a fraction of the monthly interest that accrues on his LFOs. Our Supreme Court has disapproved of imposing LFOs when the defendant cannot or will not be able to pay off the principal amount. *See Wakefield*, 186 Wn.2d at 607. Although RCW 10.01.160(3) does not expressly say what "costs" the defendant must be able to pay, the only rational interpretation of the statute is that it requires the defendant to be able to pay the total amount of discretionary LFOs imposed, including interest. *See Wakefield*, 186 Wn.2d at 607 (encouraging courts to remit LFOs if the person cannot "pay amounts that will *actually pay off* their LFOs" (emphasis added)).

Because the evidence from the resentencing hearing does not support the trial court's finding that Mr. Aguilar has the ability to pay the total discretionary costs of $34,718.97 plus interest, it was clearly erroneous for the trial court to impose those costs.[2] We therefore remand for the trial court to strike Mr. Aguilar's discretionary LFOs.

---

[2] The dissent does not dispute that Mr. Aguilar can never pay the LFO judgment. Despite the plain language of RCW 10.01.160(3) that prohibits imposition of discretionary LFOs if a defendant lacks the current or likely future ability to pay, the dissent would conclude that imposition of discretionary LFOs was proper. In so holding, the dissent ignores the clear implication of *Blazina*, 182 Wn.2d 827: discretionary LFOs are improper if an individualized inquiry fails to establish that the defendant has the present or likely future ability to pay LFOs.

No. 34221-2-III
*State v. Aguilar*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

I CONCUR:

_____
Pennell, J.

8

No. 34221-2-III

SIDDOWAY, J. (dissenting in part) — The legislature has required that the Department of Corrections (DOC) make work programs available to inmates. *See, e.g.,* RCW 72.09.100. It requires DOC to make deductions from an inmate's wages for costs of incarceration, the crime victim's compensation fund, legal financial obligations (LFOs), any civil judgment for assault, and an inmate savings account. RCW 72.09.111(a). The formula developed by the DOC for distributing inmate wages "shall not reduce the inmate account below the indigency level, as defined in RCW 72.09.015." RCW 72.09.111. The deductions have been held constitutional. *In re Pers. Restraint of Metcalf*, 92 Wn. App. 165, 176-83, 963 P.2d 911 (1998), *cert. denied*, 527 U.S. 1041, 119 S. Ct. 2405, 144 L. Ed. 2d 803 (1999).

The current rate at which LFOs are withheld from an inmate's wages is 20 percent. RCW 72.09.111(a)(iv); DOC Policy 200.00 attachment 2 (Deduction Matrix, rev. 7/15).[1] At the hearing granted Mr. Aguilar to engage in the *Blazina*[2] inquiry, the trial court was informed that in the 16 months or less in which Mr. Aguilar had been in DOC custody,[3] he had paid $193.99 toward his LFOs, suggesting that he had earned wages of $969.95 ($193.99/.20). Clerk's Papers (CP) at 26. Based on that showing, the trial court

---

[1] http://www.doc.wa.gov/information/policies/files/200000a2.pdf [https://perma.cc/JL5Y-QS5N].

[2] *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).

[3] The $193.99 received was as of a submission dated January 22, 2016, Clerk's Papers (CP) at 26; his judgment and sentence was entered on September 24, 2014. CP at 3.

found that Mr. Aguilar had a "minimal ability to currently pay." CP at 34. The court "[did not] see a problem" taking deductions from Mr. Aguilar's earnings in prison, adding, "At this point in time I don't think it's appropriate to address or eliminate some LFO's. *It certainly would be at the time he is released.*" Report of Proceedings (RP) (Feb. 18, 2016) at 3-4 (emphasis added). In its order, the court wrote, "It is appropriate to re-address LFO issue when Def is released from custody."[4] CP at 34. In recognizing the likelihood of future remission of any LFOs and interest that Mr. Aguilar is unable to pay through wage deductions while in prison, the trial court's decision is not inconsistent with *City of Richland v. Wakefield*, 186 Wn.2d 596, 601, 380 P.3d 459 (2016).

---

[4] *See* RCW 10.82.090 regarding postrelease reduction or waiver of interest accruing during the period of total confinement. In its finding explaining amendment of the provision in 2011, the legislature stated:

> (1) The legislature finds that it is in the interest of the public to promote the reintegration into society of individuals convicted of crimes. Research indicates that legal financial obligations may constitute a significant barrier to successful reintegration. The legislature further recognizes that the accrual of interest on nonrestitution debt during the term of incarceration results in many individuals leaving prison with insurmountable debt. These circumstances make it less likely that restitution will be paid in full and more likely that former offenders and their families will remain in poverty. In order to foster reintegration, this act creates a mechanism for courts to eliminate interest accrued on nonrestitution debt during incarceration and improves incentives for payment of legal financial obligations.
>
> (2) At the same time, the legislature believes that payment of legal financial obligations is an important part of taking personal responsibility for one's actions. The legislature therefore, supports the efforts of county clerks in taking collection action against those who do not make a good faith effort to pay.

LAWS OF 2011, ch. 106, §§ 1-2. Whatever our personal views as appellate judges, we must respect the actions of the legislature acting within its governmental sphere.

The legislature has determined that inmates able to earn wages in DOC work programs should use up to 75 percent to apply to their obligations and savings, including applying 20 percent to LFOs imposed by the court. By ordering the trial court to strike all of Mr. Aguilar's discretionary legal financial obligations rather than reduce them, so that Mr. Aguilar will be able to keep more of his wages (which is the principal relief he was requesting[5]) the majority apparently disagrees. While I am surprised that the trial court did not reduce the discretionary court costs, and I would have reached a different decision myself, I believe it usurps the policy judgment of the legislature and the sentencing discretion of the trial court for us to strike the discretionary LFOs entirely, giving Mr. Aguilar what is, effectively, a reprieve from the statutory wage deduction requirement. I therefore respectfully dissent.

Siddoway, J.

---

[5] As Mr. Aguilar's lawyer stated at the hearing,

My client's main issue what is owing him in prison is that ultimately at the end of the day they take 75 percent of his earnings. As a result out of a pay check that he gets per month approximately $150 realizing on the record that that fluctuates a little bit he winds up with about $40 a month. So that was part of the driving force in the matter, Your Honor.

RP (Feb. 18, 2016) at 2-3.

3