## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34766-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TAMMY LYNN DAVIS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — A jury found Tammy Lynn Davis guilty of unlawful

possession of a controlled substance—methamphetamine. She argues the trial court erred

in ordering a 12-month community custody term, in ordering various community custody

conditions, and in ordering her to pay discretionary legal financial obligations (LFOs).

We affirm the term of her community custody, reverse some community custody

conditions, and order the trial court to strike discretionary LFOs.

## FACTS

On December 23, 2015, Tammy Lynn Davis was shopping at a Walmart store in

Chelan County. Ms. Davis went to the self-checkout stand to complete her purchase. As

she withdrew money from her back pocket, a small "baggie" fell out of her pocket and

onto the floor. An employee later found the baggie. A security camera showed that the

baggie, later determined to contain methamphetamine, fell out of Ms. Davis's pocket.

The State charged Ms. Davis with unlawful possession of a controlled substance—

methamphetamine. At trial, Ms. Davis presented a theory of unwitting possession and

testified on behalf of her defense. The jury rejected her defense and found her guilty.

At sentencing, the State recommended a first time offender waiver and sentence of

30 days' confinement. Ms. Davis countered and asked for work crew instead of total

confinement. Her counsel argued:

> Sentence her because of who she is and what the crime she was convicted
> of. And who she is is a law-abiding woman who's been on Social Security,
> SSI [Social Security Income], that probably won't be able to return to active
> gainful employment, although as long as it's not too hot, she can clean up
> trash alongside the highway with work crew.
>     I see cases like this. This is a possession case, right, and so is this
> woman an addict? That's what we should find out first. And if she's an
> addict, then she needs treatment for that addiction, but jail isn't going to
> change that addiction if that's the problem, because that's what she was
> convicted of was possessing something that she shouldn't have held, not
> something that belonged to somebody else but possessing something she
> shouldn't have held. And so we're going to sentence this woman.
> Shouldn't we try to do something to make sure this doesn't happen again?
> She's a 56-year-old woman.

Report of Proceedings (RP) at 163. The trial court asked what her disability was, and she

replied arthritis.

2

The trial court, persuaded by counsel's argument, imposed a 30-day sentence and permitted 27 of those days to be served by work crew. The trial court also imposed $1,650 of LFOs, plus a witness fee to be determined later. The LFOs were comprised of mandatory and discretionary LFOs. The mandatory LFOs were: a $500 victim assessment, a $200 criminal filing fee, and a $100 deoxyribonucleic collection fee. The discretionary LFOs were: a $250 jury demand fee, a $500 fee for court-appointed attorney, and a $100 crime laboratory fee. The trial court asked Ms. Davis how much she could pay per month and set the monthly payment at $25.

The trial court entered a finding on the judgment and sentence that Ms. Davis had a chemical dependency that contributed to the offense. The court ordered a chemical dependency evaluation within 60 days, and that she successfully complete any recommended treatment/counseling program.

In addition to other conditions of community custody, the trial court ordered Ms. Davis not to frequent places whose principal source of income is the sale of alcoholic beverages, and, at her own expense, to submit to random urinalysis, blood alcohol content (BAC), or other tests.

The trial court held a hearing one month later to address witness fees and also Ms. Davis's inability to meet the physical demands of work crew. Ms. Davis requested

community service and a reduction of LFOs. The State addressed the LFOs by saying,

"But there is recent case law on SSI and discretionary LFOs that may have an impact on

that." RP at 174. The State was referring to *City of Richland v. Wakefield*, 186 Wn.2d

596, 380 P.3d 459 (2016), which had been decided in the interim since the first

sentencing hearing. Ms. Davis did not mention or cite the case, but explained that since

she lived on $960 per month from disability income and her federal housing aid had been

lost because of her recent felony conviction, she could not afford to pay LFOs. The trial

court converted Ms. Davis's remaining sentence to community service, struck only the

witness fee, and reduced her LFO payments to $15 per month.

This appeal followed.

## ANALYSIS

A.    COMMUNITY CUSTODY TERM AND CONDITIONS

For the first time on appeal, Ms. Davis challenges the term and several conditions

of her community custody. The State asserts that Ms. Davis's failure to object below

precludes her from raising these errors now. We disagree. Defendants may generally

challenge community custody conditions that are contrary to statutory authority for the

first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 745, 193 P.3d 678 (2008).

4

Ms. Davis argues the trial court erred in (1) entering a finding that she had a chemical dependency that contributed to the offense and requiring her to successfully complete any recommended treatment program, (2) ordering a 12-month term for community custody, (3) precluding her from frequenting places whose primary source of income is the sale of alcoholic beverages, and (4) submitting to random urinalysis, BAC, or other tests at the direction of her community custody officer.

1.    *Chemical dependency finding and completion of recommended treatment program*

Ms. Davis contends the trial court erred in entering the chemical dependency finding because there was insufficient evidence that she suffered from any chemical dependency. We conclude the invited error doctrine prohibits her from raising this argument.

The invited error doctrine prohibits a party from setting up an error and then complaining of it on appeal. *State v. Henderson*, 114 Wn.2d 867, 870, 792 P.2d 514 (1990) (quoting *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984)). The invited error doctrine applies only where the defendant engaged in some affirmative action by which she knowingly and voluntarily set up the error. *In re Pers. Restraint of Call*, 144 Wn.2d 315, 326-28, 28 P.3d 709 (2001). This court applies the invited error doctrine as a

"strict rule" to situations where the defendant's actions at least in part caused the error. *State v. Studd*, 137 Wn.2d 533, 547, 973 P.2d 1049 (1999).

During sentencing, Ms. Davis's counsel persuaded the trial court to impose work release in lieu of 30 days' jail, and argued the court's focus should be on whether Ms. Davis was an addict in need of treatment. To give effect to her request, RCW 9.94A.607(1) required the trial court to enter a finding that Ms. Davis suffered from a chemical dependency that contributed to her offense. *State v. Warnock*, 174 Wn. App. 608, 612, 299 P.3d 1173 (2013). Ms. Davis may not now claim the trial court erred when it was her request at sentencing that necessitated the finding.

    *2.    Community custody term*

Ms. Davis argues the trial court erred when it imposed 12 months of community custody. We disagree.

RCW 9.94A.650(3) authorizes up to 12 months of community custody when the sentence includes treatment. Because Ms. Davis's sentence included the possibility of treatment, the trial court did not err.

    *3.    Frequenting places such as taverns and cocktail lounges*

6

Ms. Davis argues the trial court erred when it ordered her not to frequent places whose principal source of income is the sale of alcohol beverages, such as taverns and cocktail lounges. We agree.

This court reviews community custody conditions for an abuse of discretion. *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). As part of any term of community custody, the court may impose and enforce crime-related prohibitions. RCW 9.94A.505(9); RCW 9.94A.703(3)(f). A crime-related community custody condition prohibits conduct that "directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). "'Directly related' includes conditions that are 'reasonably related' to the crime." *Irwin*, 191 Wn. App. at 656 (quoting *State v. Kinzle*, 181 Wn. App. 774, 785, 326 P.3d 870 (2014)).

The record reflects the trial court was concerned that Ms. Davis might enter a tavern and trade alcohol for methamphetamine. This is a tenuous link to the committed offense. A person could potentially use anything as a bartering chip for methamphetamine. No evidence suggests Ms. Davis used alcohol or any other substance to acquire methamphetamine in this case. Therefore, this condition is not crime related, and the trial court abused its discretion in ordering this prohibition.

### 4. *Submitting to random drug and alcohol tests*

Ms. Davis asserts the trial court erred in requiring her to submit to random urinalysis, BAC, or other tests. The State asserts that such random tests are permitted under RCW 9.94A.607(1) (chemical dependency finding and treatment) and RCW 9.94A.703(3) (community custody conditions). We disagree in part but affirm the requirement on a supplemental basis.

Under RCW 9.94A.607(1) and RCW 9.94A.703(3), a trial court has authority to require the offender to perform affirmative conduct reasonably related to the circumstances of the crime, provided the requirement is beneficial to the offender or the community. Ordering an offender to cooperate with random drug tests to ensure compliance with a community custody condition is beneficial to the offender and is therefore valid.

Here, the circumstance of the crime involved possession of methamphetamine, not alcohol. However, a trial court may always order a prohibition on possessing or consuming alcohol. RCW 9.94A.703(3)(e). A trial court also has the authority to enforce conditions that it imposes. *State v. Vant*, 145 Wn. App. 592, 603-04, 186 P.3d 1149 (2008) (discussing former statute). Requiring Ms. Davis to submit to random alcohol testing ensures compliance with the condition it imposed on her prohibiting her from

8

possessing or consuming alcohol.

B.     LEGAL FINANCIAL OBLIGATIONS

Ms. Davis argues the trial court erred because it did not sufficiently consider her

present or future ability to pay before imposing discretionary LFOs.  She further argues

that the unrebutted evidence was that she was physically disabled because of arthritis and

supporting herself and her grandson on a fixed monthly disability benefit.

The State first argues that Ms. Davis failed to preserve this issue for review.  We

disagree.  Ms. Davis argued, especially at the second hearing, that she could not afford to

pay the legal financial obligations.  She emphasized that her conviction caused her to lose

her housing subsidy, that she was on a fixed disability income, and that she was

supporting herself and her grandson.  In response, the trial court did not impose

discretionary witness fees, and reduced the required monthly payment to $15.  In doing

so, the trial court did not explicitly find that Ms. Davis could either pay $15 per month or

that she could eventually pay the total judgment including interest.

In *Wakefield*, our Supreme Court emphasized that trial courts should "'seriously

question'" whether a person, indigent for purposes of GR 34, has the ability to pay LFOs.

186 Wn.2d at 607 (quoting *State v. Blazina*, 182 Wn.2d 827, 839, 344 P.3d 680 (2015)).

9

No. 34766-4-III
*State v. Davis*

The *Wakefield* court further admonished courts against imposing miniscule monthly payments that will not even pay the judgment principal. *Id.*

Here, the trial court found that Ms. Davis was indigent for purposes of GR 34. Ms. Davis's total judgment is $1,650. At 12 percent interest per year, such a judgment accrues monthly interest of $16.50. Even if Ms. Davis could pay $15 per month, a finding that the trial court did not make, that amount would be insufficient to pay the interest on the judgment. We conclude the trial court erred in ordering Ms. Davis to pay discretionary LFOs.

In conclusion, we remand for the trial court to strike (1) the prohibition against frequenting places whose primary source of income is the sale of alcoholic beverages and (2) discretionary LFOs.

Affirmed in part and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Siddoway, J.

10