# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50634-3-II |
| Respondent, | |
| v. | |
| MICKEY ROBERT GUAYANTE, | UNPUBLISHED OPINION |
| Petitioner. | |

WORSWICK, J. —Mickey Guayante appeals from an order denying his motion to terminate his legal financial obligations (LFOs), asserting that the sentencing court abused its discretion by denying his motion on the basis that he had failed to establish a manifest hardship. He requests we order the sentencing court to terminate his $7,500 appointed attorney fee and the balance of interest accrued on the fee.  In a Statement of Additional Grounds (SAG) for Review, Guayante asserts that the sentencing court employed an incorrect standard when determining whether his payment of LFOs would impose a manifest hardship.

The State agrees that we may order the sentencing court to terminate Guayante's $7,500 appointed attorney fee.  We accept the State's agreement and remand to the sentencing court for entry of an order terminating Guayante's $7,500 appointed attorney fee.  But because the sentencing court did not have discretion to modify the interest on Guayante's LFOs, it did not err by failing to do so, and we do not direct the sentencing court to modify such interest on remand.

FACTS

On March 6, 1998, the trial court entered a judgment and sentence against Guayante following his guilty plea to first degree felony murder. The trial court sentenced Guayante to 340 months of incarceration and imposed legal financial obligations that included a $7,500 appointed attorney fee.

On May 9, 2017, Guayante filed a motion to remit his LFOs. Guayante also filed an affidavit in support of his remission motion in which he declared:

> At the time I was sentenced in the above cause I had already been found indigent by the sentencing court pursuant to RCW 10.101.010(3)(a), (c), and (d). There has been no positive change in my financial circumstance, and in fact my station in life has greatly diminished.
>
> I am currently serving more than 25 years in the Washington DOC [(Department of Corrections)] and have no means to pay the LFOs. In addition, my mental disabilities make it certain that I will never again be gainfully employed. I will never purposefully rebel against paying my LFOs, and therefore be in contumacious default, but the foreseeable future does not include a way for me to make payments.
>
> Upon my release in approximately six more years I will be homeless and unemployed. The only manner of income I will be receiving is government benefits which do not rise above the level of self-sufficiency standards. As an indigent and disabled person my future outlook is not bright and the added stress of fulfilling these financial obligations is greatly distressing. I humbly ask you for relief so that my reentry into society may have one less obstacle and that much greater of a chance at being successful.

Clerk's Papers (CP) at 32-33. The State opposed Guayante's remission motion, arguing that he could not demonstrate that payment of his LFOs were currently inflicting a manifest hardship because the Department of Corrections was providing for his basic needs. At a hearing addressing Guayante's motion to remit LFOs, the sentencing court stated it was denying the motion, reasoning:

No. 50634-3-II

> We take people as we find them at the time that the motion [to remit LFOs] is filed and at this time, I cannot make a finding that there's a manifest hardship because all of your basic necessities of life are being provided by the State. That may change in the future and you are welcome to bring the motion again at any time, sir.

Report of Proceedings at 14. The sentencing court entered a written order denying Guayante's motion to remit, which stated, "The Court finds that the motion to remit may be brought at any time. However at this time the Defendant has failed to establish a manifest hardship." CP at 38. We granted discretionary review of the sentencing court's order denying Guayante's motion to remit.

ANALYSIS

Guayante contends that the trial court abused its discretion by denying his motion to remit on the basis that he could not show a manifest hardship due to the fact that the Department of Corrections was providing for his basic needs. We agree.

Guayante filed his motion to remit under former RCW 10.01.160(4) (2015),[1] which provided:

> A defendant who has been ordered to pay costs and who is not in contumacious default in the payment thereof may at any time petition the sentencing court for remission of the payment of costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170.

---

[1] In 2018, the legislature amended RCW 10.01.160(4) to provide that a defendant may file a motion to remit costs only after release from total confinement and that a manifest hardship exists where the defendant is indigent as defined in RCW 10.101.010(3)(a) through (c). Laws of 2018, ch. 269 § 6(4). Neither party argues that the 2018 amendments apply.

3

Former RCW 10.01.160(4) does not define "manifest hardship." Our Supreme Court has held that "[a] person's present inability to meet his or her own basic needs is not only relevant, but crucial to determining whether paying LFOs would create a manifest hardship." *City of Richland v. Wakefield*, 186 Wn.2d 596, 606, 380 P.3d 459 (2016). Our Supreme Court did not, however, suggest that a present inability to meet basic needs was an exclusive factor to be considered by a sentencing court when evaluating whether a defendant's LFO payments would cause a manifest hardship or that a present ability to meet basic needs would foreclose a finding of manifest hardship. *Wakefield*, 186 Wn.2d at 606-07. To the contrary, the *Wakefield* court noted that remission under former RCW 10.01.160(4) is appropriate where the defendant has no present or future ability to pay LFOs that are subject to remission. 186 Wn.2d at 606-607. And sentencing courts should use GR 34's indigency standards as a guide for determining whether a defendant has a present or future ability to pay LFOs and, thus, whether a defendant's payment would cause a manifest hardship. 186 Wn.2d at 606-607.

Here, Guayante agreed at his remission hearing that his current ability to meet basic needs was a relevant factor for consideration in determining whether his LFO payments would cause a manifest hardship. But Guayante argued that, under *Wakefield*, the sentencing court should also consider his inability to pay LFO as evidenced by his indigent status under GR 34 when determining whether his payments would impose a manifest hardship. The sentencing court did not evaluate Guayante's ability to pay or determine whether he was indigent under GR 34, instead stating that it was foreclosed from finding a manifest hardship based on the fact that the Department of Corrections was providing for Guayante's basic needs.

We hold that, under our Supreme Court's guidance in *Wakefield*, the sentencing court abused its discretion by failing to consider Guayante's indigent status and inability to pay LFOs that were subject to remission when denying his motion. *State v. Bauer*, 98 Wn. App. 870, 878, 991 P.2d 668 (2000) (A trial court abuses its discretion when its decision is based on untenable grounds or reasons.). Thus we reverse the trial court's order denying Guayante's motion to terminate his LFOs.

Although we would typically remand to the sentencing court to reconsider Guayante's motion with direction to consider his ability to pay under the guidance of GR 34, in light of our Supreme Court's precedent and the parties' agreement as to the appropriate remedy, we remand for entry of an order terminating Guayante's $7,500 appointed attorney fee. *See Wakefield*, 186 Wn.2d at 606.[2]

We do not, however, direct the sentencing court to terminate any interest accrued on Guayante's appointed attorney fee because it does not have discretion to do so until Guayante is released from total confinement. When Guayante filed his motion to remit, former RCW 10.82.090 (2015) governed the sentencing court's authority to waive or reduce interest on his LFOs. Former RCW 10.82.090(2) provided the sentencing court with discretion to waive or reduce an offender's LFO interest only after "the offender's release from total confinement." Because Guayante filed his motion to remit while incarcerated, former RCW 10.82.090(2) did not permit the sentencing court to waive or reduce any interest accrued on his LFOs.

---

[2] Because we grant Guayante's requested relief based on the arguments raised by his counsel, we do not address his SAG.

No. 50634-3-II

Accordingly, the sentencing court did not err by declining to waive any accrued interest on Guayante's appointed attorney fee, and we direct the sentencing court on remand to terminate only Guayante's $7,500 appointed attorney fee and not any interest accrued on the fee.[3]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Maxa, C.J.

_____
Glasgow, J.

---

[3] Under the current version of RCW 10.82.090, no interest shall accrue on nonrestitution LFOs as of June 7, 2018. Additionally, the current version of RCW 10.82.090(2)(a) directs sentencing courts to waive all interest on nonrestitution LFOs that accrued before June 7, 2018 on motion by the offender "following the offender's release from total confinement." Therefore, Guayante will be relieved of all the interest accrued on his appointed attorney fee if he files a motion under RCW 10.82.090 after his release from incarceration.