IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35729-5-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 35730-9-III) |
| v. | ) | |
| | ) | |
| JOEL MATTHEW GROVES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Joel Groves appeals the trial court's dismissal of motions asking that it order the Department of Corrections (DOC) to cease deducting his legal financial obligations (LFOs) from his inmate account. He argues that this court's decision in *State v. Crook*, 146 Wn. App. 24, 189 P.3d 811 (2008)—which held that such deductions are not collection actions requiring inquiry into a defendant's financial status under RCW 10.01.160(3)—is incorrect and harmful, and should be overruled.

*Crook* was correctly decided. For that reason, and because $200 in court costs that he challenges reflect the mandatory criminal filing fee, we affirm the dismissal of his motions.

No. 35729-5-III (consolidated with No. 35730-9-III)
*State v. Groves*

FACTS AND PROCEDURAL BACKGROUND

While incarcerated, Mr. Groves, claiming an inability to pay LFOs imposed against him in judgments entered in 2007 and 2010, moved for relief. The trial court granted Mr. Groves's motion in part, reducing his LFOs in each matter to $800, comprising the victim's penalty assessment ($500), the criminal filing fee ($200), and a DNA[1] collection fee ($100).

A few months later, Mr. Groves filed additional motions in both cases, asking the trial court to prevent the DOC from deducting LFOs from his inmate account and to vacate his remaining LFOs as unconstitutional.

At a hearing on the motions, the prosecutor reported her understanding that "at a prior hearing . . . the court reduced the amount of LFOs to the lowest amount allowable under the law" and she did not believe there was anything more the court could do. Report of Proceedings (RP) at 3. The court denied the motions. Mr. Groves appeals.

ANALYSIS

On appeal, Mr. Groves argues that *Fuller v. Oregon*, 417 U.S. 40, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974), *State v. Blank*, 131 Wn.2d 230, 241-42, 930 P.2d 1213 (1997), *City of Richland v. Wakefield*, 186 Wn.2d 596, 380 P.3d 459 (2016), and RCW 10.01.160 (which applies to costs imposed at sentencing) require us to limit the DOC's right and obligation to deduct LFOs from amounts payable to him.

_____

[1] Deoxyribonucleic acid.

His argument is backwards. We must begin with the statutes under which the legislature has directed the DOC to deduct LFOs from inmate funds, which we can then review for any constitutional infirmity.

RCW 72.11.020 provides that the secretary of the DOC "shall be custodian of all funds of a convicted person that are in his or her possession upon admission to a state institution, or that are sent or brought to the person, or earned by the person while in custody, or that are forwarded to the superintendent on behalf of a convicted person" and that "[a]ll such funds shall be deposited in the personal account of the convicted person." The statute further provides that

> the secretary shall have authority to disburse money from such person's personal account for the purposes of satisfying a court-ordered legal financial obligation to the court. Legal financial obligation deductions shall be made as stated in RCW 72.09.111(1) and 72.65.050 without exception. Unless specifically granted authority herein, at no time shall the withdrawal of funds for the payment of a legal financial obligation result in reducing the inmate's account to an amount less than the defined level of indigency to be determined by the department.

*Id.*

RCW 72.09.111(1) authorizes the DOC to develop a formula for the distribution of offender wages, gratuities, and benefits and identifies certain maximum allowable deductions. It further provides that the DOC's formula "shall not reduce the inmate account below the indigency level, as defined in RCW 72.09.015." *Id.* "Indigent inmate," "indigent," and "indigency" are defined by RCW 72.09.015(15) to mean "an

inmate who has less than a ten-dollar balance of disposable income in his or her institutional account on the day a request is made to utilize funds and during the thirty days previous to the request."

Mr. Groves does not contend that the DOC has been deducting amounts in excess of its formula and statutory maximums. He does not demonstrate that the deductions are unconstitutional. As recognized in *Blank*, the *constitutional* concern is at the point of collection and when sanctions are sought for nonpayment. 131 Wn.2d at 242. "If at that time defendant is unable to pay through no fault of his own, *Bearden* [*v. Georgia*, 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983)] and like cases indicate constitutional fairness principles are implicated." *Blank*, 131 Wn.2d at 242.

As *Wakefield* demonstrates, for an individual who is no longer incarcerated, a "crucial" consideration in determining ability to pay is the individual's ability "to provide for one's own basic needs." 186 Wn.2d at 606. In Ms. Wakefield's case, she was receiving $710 in social security disability payments each month and presented expert testimony that the self-sufficiency standard for a one person household in her community—"the resources needed to meet only 'the core necessities of life, such as clothing, food, shelter and medical care at a decent level'"—was $1,492 per month. *Id.* at 601-02.

"Indigency" for an individual who is incarcerated and whose basic needs are being met by the State will have a different meaning. Under RCW 72.09.111(1)(a)(iii), for instance, the maximum amount DOC can deduct from an inmate's wages to contribute to his or her cost of incarceration is 20 percent. Mr. Groves does not attempt to demonstrate that, while incarcerated, he is unable to pay the amount toward his LFOs that the DOC is permitted to deduct from his wages, gratuities or benefits. He does not demonstrate any constitutional problem with RCW 72.09.015(15)'s definition of "indigent inmate," "indigent" and "indigency."

Mr. Groves's remaining challenge is to the trial court's imposition in his modified judgments of $200 identified only as "court costs." He argues that the $200 should be construed as unintended discretionary costs and asks us to remand with directions to strike it. He makes this argument at the same time he admits that "[t]he trial court made clear its intention of eliminating all discretionary LFOs from Groves's judgment and sentence, retaining only . . . 'mandatory' LFOs." Br. of Appellant at 9.

The trial court's orders that reduced his LFOs leave no room for confusion about the $200 assessment; it was clearly the criminal filing fee, which, at the time of Mr. Groves's convictions, was mandatory even for indigent defendants. *See* former RCW 36.18.020(2)(h) (2015). The orders state:

No. 35729-5-III (consolidated with No. 35730-9-III)
*State v. Groves*

       IT IS ORDERED, on the Defendant's motion and upon hearing in open court, the legal financial obligations in the above-captioned matter are modified to consist only of the following:

| | |
|---|---|
| Victim's penalty assessment | $500.00 |
| *Criminal filing fee* | *200.00* |
| DNA collection fee | 100.00 |
| | |
| Total | 800.00 |

Clerk's Papers at 30, 160 (emphasis added). And as the State points out, if we deemed the cost to be discretionary and remanded for the trial court to strike it, we would need to direct the court to impose the criminal filing fee at the same time.

       The dismissal orders are affirmed.

       A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Fearing, J.

Pennell, A.C.J.

6