

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **APR 18 2019**

~~Fairhurst, CJ~~
CHIEF JUSTICE

This opinion was
filed for record
at 8:00 on 4-18-19

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 95794-1 |
| Respondent, | ) | |
| v. | ) | En Banc |
| JASON MICHAEL CATLING, | ) | |
| Petitioner. | ) | Filed **APR 18 2019** |

MADSEN, J.—This case concerns application of the Social Security Act's antiattachment statute, 42 U.S.C. § 407(a), in the context of mandatory legal financial obligations imposed on a convicted felon. Specifically, the issue is whether under the circumstances of this case, the trial court's *imposition* of mandatory legal financial obligations violates the antiattachment statute. The Court of Appeals held that the particular financial obligations imposed here did not violate the federal antiattachment statute but remanded for clarification of the payment order. For the reasons discussed below, we affirm in part, reverse in part, and remand with instructions.

## FACTS

The facts precipitating this case are as follows. On February 1, 2016, the State charged Jason Michael Catling with two counts of delivery of heroin, a controlled

substance. On August 18, 2016, pursuant to a plea deal, Catling pleaded guilty to one count of delivery of heroin in exchange for the State's agreement to dismiss the other drug delivery charge and to recommend a residential drug offender sentencing alternative (DOSA).

Catling was sentenced on September 23, 2016. During the sentencing hearing, Catling's attorney argued that because Catling's sole source of income was Social Security disability benefits, the trial court should not impose any legal financial obligations (LFOs), including mandatory obligations, based on this court's decision in *City of Richland v. Wakefield*, 186 Wn.2d 596, 380 P.3d 459 (2016), which had just issued the day before Catling's sentencing hearing.

The sentencing court had not yet reviewed *Wakefield*, took the LFO matter under advisement, and ascertained that Catling's sole source of income was Social Security disability benefits in the amount of $753 per month. Catling had been receiving these benefits for approximately 10 years because of chronic pain and multiple corrective surgeries regarding his congenital bladder condition.

On September 26, 2016, the trial court issued a written order imposing mandatory LFOs totaling $800 ($500 for crime victims' compensation assessment (per RCW 7.68.035(1)(a)), $200 for criminal filing fee (per RCW 36.18.020(2)(h)), and $100 DNA (deoxyribonucleic acid) collection fee (per RCW 43.43.7541)). The order stated, "[T]he mandatory legal financial obligations can be ordered when a person is indigent and whose only source of income is social security disability." Clerk's Papers (CP) at 35. The order directed Catling to pay $25 per month starting January 5, 2017.

On October 5, 2016, Catling moved the trial court to reconsider its imposition of LFOs, again citing *Wakefield* and 42 U.S.C. § 407(a). The court denied the motion on October 19, 2016, and Catling timely filed a notice of appeal on October 26, 2016.[1]

On appeal, the State conceded that the sentencing court erred in setting a payment schedule obligating Catling to begin payment of his mandatory LFOs when the information presented at sentencing indicated that Catling's only source of income was Social Security disability benefits. The State argued, however, that the appropriate remedy was not to strike the LFOs as Catling requested, but rather to strike the payment schedule and require the defendant to periodically present proof to the trial court that he continued to have no source of income except for Social Security disability benefits.

In a split decision, a panel of Division Three of the Court of Appeals held that although the sentencing court may *impose* mandatory LFOs on a recipient of Social Security disability benefits, it may not order such a defendant *to pay* those obligations without first determining the defendant has another source of income. *State v. Catling*, 2 Wn. App. 2d 819, 820-26, 413 P.3d 27 (2018). The Court of Appeals' dissent expressed concern about the burden on the defendant of continuing court appearances, questioned whether the defendant would ever be able to pay off the LFOs, and opined that such circumstance would ultimately coerce the defendant to invade his sheltered income to pay off the obligations. *Id.* at 845-47 (Fearing, C.J., dissenting). The dissent would have

---

[1] After Catling filed his appeal, the trial court revoked his DOSA sentence in an order filed on January 20, 2017. The trial court also reset Catling's LFO payment schedule to commence on January 15, 2018.

remanded the matter to the sentencing court to determine whether Catling "will likely receive other income in the indefinite future." *Id.* at 846.

The Court of Appeals' majority decision affirmed the imposition of the noted mandatory LFOs but remanded to the trial court to amend the judgment and sentence to specify that LFOs may not be satisfied out of funds protected by 42 U.S.C. § 407(a). *Id.* at 821, 826.[2] Catling petitioned for review.[3] This court granted review "only on the issue whether the imposition of mandatory [LFOs] on the Petitioner violates the Social Security Act's antiattachment provision." Order Granting Review, *State v. Catling*, No. 95794-1 (Wash. Aug. 8, 2018).

## ANALYSIS

I.    *Ramirez*[4] controls portions of this case

As a threshold matter, this case is partially resolved by this court's recent decision in *Ramirez*. In *Ramirez*, this court held that the legislature's overhaul of Washington's LFO provisions in House Bill (HB) 1783, which became effective on June 7, 2018, applied to a pending appeal concerning LFOs. This court explained:

> House Bill 1783's amendments modify Washington's system of LFOs, addressing some of the worst facets of the system that prevent offenders from rebuilding their lives after conviction. For example, House Bill 1783 eliminates interest accrual on the nonrestitution portions of LFOs, it establishes that the DNA database fee is no longer mandatory if the offender's DNA has been collected because of a prior conviction, and it

---

[2] The Court of Appeals also declined to reach Catling's argument concerning LFOs for defendants with mental health conditions (based on RCW 9.94A.777) because that issue was not raised below.

[3] Amici Disability Rights Washington and Northwest Justice Project filed briefs urging that review be granted.

[4] Our unanimous decision in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), issued after the parties filed their supplemental briefs in the present case.

provides that a court may not sanction an offender for failure to pay LFOs unless the failure to pay is willful. LAWS OF 2018, ch. 269, §§ 1, 18, 7. . . . It also prohibits imposing the $200 filing fee on indigent defendants. *Id.* § 17. . . . We hold that House Bill 1783 applies prospectively to Ramirez because the statutory amendments pertain to [financial obligations] imposed on criminal defendants following conviction, and Ramirez's case was pending on direct review and thus not final when the amendments were enacted.

*Ramirez*, 191 Wn.2d at 747. "Because House Bill 1783's amendments pertain to costs imposed upon conviction and Ramirez's case was not yet final when the amendments were enacted, Ramirez is entitled to benefit from this statutory change." *Id.* at 749.

Here, no restitution was imposed; as noted, the trial court imposed only three LFOs: the criminal filing fee, the DNA collection fee, and the crime victim fund assessment. As for the filing fee, the *Ramirez* decision explained, "House Bill 1783 . . . amends the criminal filing fee statute, former RCW 36.18.020(2)(h) [(2015)], to prohibit charging the $200 criminal filing fee to defendants who are indigent at the time of sentencing. LAWS OF 2018, ch. 269, § 17." *Id.* at 748. RCW 36.18.020(2)(h) now provides, in pertinent part, "Upon conviction or plea of guilty . . . an adult defendant in a criminal case shall be liable for a fee of two hundred dollars, *except this fee shall not be imposed on a defendant who is indigent* as defined in RCW 10.101.010(3) (a) through (c)." (Emphasis added.) Here, the record indicates that Catling was indigent at the time of sentencing. He received public assistance in the form of Social Security disability benefits and food stamps, thus meeting the criteria for indigency. *See* RCW 10.101.010(3)(a) (food stamps); CP at 84 (Catling received food stamps); *see also* CP at 86-88 (order permitting appeal at public expense). Thus, as in *Ramirez*, "the trial court

5

improperly imposed . . . the criminal filing fee." *Ramirez*, 191 Wn.2d at 748. The appropriate remedy is to "remand for the trial court to amend the judgment and sentence to strike the improperly imposed LFOs." *Id.* at 750.

As for the trial court's imposition of the DNA collection fee, that LFO may also be improper. Under HB 1783, the DNA collection fee is no longer mandatory if a DNA sample has been collected from a defendant based on a prior conviction. RCW 43.43.7541 now provides, in relevant part, "Every sentence imposed for a crime specified in RCW 43.43.754 [i.e., any felony] must include a fee of one hundred dollars unless the state has previously collected the offender's DNA as a result of a prior conviction." LAWS OF 2018, ch. 269, § 18. Since 2002, a felony conviction triggers the mandatory taking of a DNA sample. *See* RCW 43.43.754; *see also* LAWS OF 2002, ch. 289, § 2. Here, Catling has three prior adult felony convictions, two of which occurred after 2002. The record does not indicate whether his DNA has been previously collected. If such collection has occurred, the trial court's imposition of the DNA collection fee here is improper. *See* LAWS OF 2018, ch. 269, § 18; *Ramirez*, 191 Wn.2d at 747. We remand to the trial court with direction to determine whether Catling has previously had a DNA sample collected and, if the court so finds, to strike the $100 DNA collection fee. *Ramirez*, 191 Wn.2d at 747-48, 750.[5]

---

[5] As noted, HB 1783 also eliminated interest accrual on all LFOs except restitution. *See* LAWS OF 2018, ch. 269, § 1(1). Accordingly, on remand, the trial court is directed to revise the judgment and sentence to eliminate such interest on any qualifying remaining LFOs.

As for the $500 crime victim fund assessment, HB 1783 retains this mandatory LFO. RCW 7.68.035(1)(a) still provides in relevant part:

> When any person is found guilty in any superior court of having committed a crime, . . . there shall be imposed by the court upon such convicted person a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be five hundred dollars for each case or cause of action that includes one or more convictions of a felony.

LAWS OF 2018, ch. 269, § 19. Elsewhere, HB 1783 specifically and repeatedly adds that "The crime victim penalty assessment under RCW 7.68.035 may not be reduced, revoked, or converted to community restitution hours," LAWS OF 2018, ch. 269, §§ 8(5), 13(3)(f), 15(4)(f), and further adds, "An offender being indigent . . . is not grounds for failing to impose . . . the crime victim penalty assessment under RCW 7.68.035." LAWS OF 2018, ch. 269, § 14(1). Concerning the crime victim fund assessment, we now turn to the petitioner's arguments.

II.     The *imposition* of the mandatory LFO here does not violate 42 U.S.C. § 407(a)

Catling relies on *Wakefield* and *Washington State Department of Social & Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003), arguing that "a court *may not impose* LFOs on a person whose sole source of income derives from social security." Pet'r's Suppl. Br. at 2 (emphasis added) (boldface omitted). We disagree.

The Social Security Act's antiattachment statute at issue here provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be

subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a). As can be seen, this provision requires that Social Security moneys cannot be reached to satisfy a debt. Notable for present purposes is what this statute does not provide. It does not forgive a debt, it does not address use of other assets to retire a debt, and it does not prohibit a debt; it only prohibits any use of Social Security moneys for debt retirement.

In *Wakefield*, this court addressed a petitioner's motion, pursuant to RCW 10.01.160(4), to remit costs (discretionary LFOs), specifically noting that petitioner "is not challenging . . . nondiscretionary LFOs." *Wakefield*, 186 Wn.2d at 601; *see also id.* at 601 n.1 (noting "only discretionary costs are at issue"). This court found that the district court erred at the remission hearing on several bases, particularly in imposing a repayment schedule of $15 per month for the discretionary LFOs without regard to whether such payments created a manifest hardship for the petitioner. Relevant here, concerning 42 U.S.C. § 407(a), the *Wakefield* court also held "federal law prohibits courts from *ordering defendants to pay* LFOs if the person's only source of income is social security disability." *Id.* at 609 (emphasis added). Again, the context of the *Wakefield* decision concerned a motion for remittitur under RCW 10.01.160(4) for discretionary LFOs and focused on the district court's imposition of a payment schedule in that context without first properly determining petitioner's ability to pay. *Wakefield* does not address the trial court's ability to *impose* mandatory LFOs. Thus, contrary to

Catling's assertions, *Wakefield* does not stand for the proposition that mandatory LFOs cannot be *imposed* on Catling.

As for *Keffeler*, Catling relies on this case for its discussion concerning the parameters of "other legal process" as used in § 407(a). But *Keffeler* really does not assist Catling. In *Keffeler*, the Supreme Court addressed a challenge by foster children to DSHS's (Department of Social and Health Services) practice of reimbursing its expenses for the foster children's care from Social Security benefits that the agency had received directly as the foster children's representative payee. The Supreme Court held that DSHS's reimbursement from the foster children's Social Security benefits "does not violate § 407(a)." *Keffeler*, 537 U.S. at 392. The Court explained that "the case boils down to whether the department's manner of gaining control of the federal funds involves 'other legal process,' as [§ 407(a)] uses that term." *Id.* at 383. Applying statutory construction principles, the Court explained that

> "other legal process" should be understood to be process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability.

*Id.* at 385. The Court further opined, "[A]lthough execution, levy, attachment, and garnishment typically involve the exercise of some sort of judicial or quasi-judicial authority to gain control over another's property, the department's reimbursement scheme operates on funds already in the department's possession and control, held on terms that allow the reimbursement." *Id.* at 386. The Court held that because DSHS's

use of the foster children's benefits in its capacity as representative payee did not involve the transfer of Social Security moneys by way of a judicial process, there was no violation of the antiattachment statute. *Id.* at 386, 392.

Catling relies on *Keffeler*'s discussion of "other legal process" as including a judicial action transferring funds from one person to another. Such transfer indeed occurred here as regards the trial court's order setting a $25 per month payment schedule. The payment schedule order was issued as part of the sentencing hearing—a judicial proceeding transferring property, thus meeting the "other legal process" prong of § 407(a). This does not advance Catling's position, however. Here, in its supplemental briefing, the State concedes, as it did in the Court of Appeals, that the trial court erred in ordering the defendant to pay the LFOs at a rate of $25 per month where the defendant's only income was Social Security disability benefits. *See* Suppl. Br. of Resp't at 13, 20. The State urges this court to affirm the remedy applied by the Court of Appeals, which recognized the error and remanded to correct it.

The Court of Appeals, consistent with *Wakefield*, acknowledged that the trial court's payment order—that Catling pay $25 per month—"cannot be enforced against his disability income per § 407(a)." *Catling*, 2 Wn. App. 2d at 826. In formulating an appropriate remedy, the Court of Appeals found persuasive a Michigan appellate court decision addressing 42 U.S.C. § 407(a), *In re Lampart*, 306 Mich. App. 226, 856 N.W.2d 192 (2014).

In *Lampart*, a supervisory parent was ordered to pay restitution for her minor son's admitted arson. The parent subsequently became disabled, after which her only income

was her Social Security disability benefits. *Id.* at 229. On appeal from the trial court's

denial of the parent's motion to modify or cancel her restitution obligation, the Michigan

appellate court opined as follows:

> If it were determined that [the parent's] only asset, or source of income, is and remains from SSDI [(Social Security disability insurance)] benefits, 42 USC § 407(a) prohibits the use of legal process—including by a finding of contempt—from reaching those benefits to satisfy the restitution order. If, however, [the parent] is found to have income aside from her SSDI benefits, or other assets that are derived from other sources, that income or those assets could be used to satisfy the restitution award. The restitution order itself remains valid. Indeed, [the parent's] receipt of SSDI benefits does not immunize her from the restitution order; rather, it merely prohibits the trial court from using legal process to compel satisfaction of the restitution order from those benefits. Because it is possible that [the parent] may have assets or may receive income from other sources in the future, we affirm the trial court's refusal to cancel or modify [the parent's] restitution obligation.
>
> The trial court's contempt powers similarly remain a valid tool in enforcing the restitution order, and our decision today should not be read otherwise. Again, a contempt hearing can be an appropriate vehicle for determining income and assets from which the restitution order may properly be enforced. However, the trial court may not compel [the parent] to satisfy her restitution obligation out of her SSDI benefits, by a contempt finding or other legal process, because [the parent] is entitled to the protections of 42 USC § 407(a).

*Id.* at 245-46 (citations omitted). Finding *Lampart* persuasive, Division Three in the

present case opined, "[A]s in *Lampart*, there is nothing in § 407(a) that invalidates the

underlying financial obligation. The antiattachment provision prevents levying against

Social Security disability proceeds, but it does not address the debt itself." *Catling*, 2

Wn. App. 2d at 826. Accordingly, the Court of Appeals remanded the case to the

sentencing court "to amend its judgment and sentence to indicate that the LFOs may not

be satisfied out of any funds subject to 42 U.S.C. § 407(a)." *Id.*

11

As noted, the only remaining mandatory LFO that is not resolved by HB 1783, as applied by *Ramirez*, is the $500 crime victim fund assessment. We affirm the Court of Appeals' remand as to this remaining mandatory LFO.

The Court of Appeals' approach, comporting with both *Wakefield* and *Lampart*, appropriately applies the plain language of 42 U.S.C. § 407(a). The remedy employed adheres to § 407(a)'s mandate that no Social Security disability benefits are available to satisfy a debt, while at the same time recognizes that nothing in § 407(a) immunizes criminal defendants receiving Social Security benefits from the imposition of mandatory LFOs—here, the crime victim fund assessment. Catling does not convincingly argue that the above remedy is in error. As discussed, neither *Wakefield* nor *Keffeler*, on which Catling relies, requires a different result.

Similarly, Catling's assertion that Washington's statutes requiring courts to impose mandatory LFOs conflict with 42 U.S.C. § 407(a) and therefore violate the supremacy clause fails. As noted, only the crime victim fund assessment remains at issue here; and, in any event, as discussed above, nothing in § 407(a) prohibits the *imposition* of a financial obligation—§ 407(a) prohibits only any use of Social Security moneys for debt retirement. While the trial court's payment order indeed violated § 407(a), the Court of Appeals' remand and directive that no Social Security funds may be used to satisfy the LFOs resolves any § 407(a) violation.

Finally, the Court of Appeals' remand order does not leave Catling in legal limbo, that is, with a mandatory LFO imposed but with no directive from the court on how to properly resolve it. Washington's LFO provisions address this possibility, authorizing

the county clerk to monitor a defendant's changing circumstances and to alter the defendant's payment schedule as needed. RCW 9.94A.760(8)(b) (recodified in HB 1783; *see* LAWS OF 2018, ch. 269, §14(8)(b)), provides:

> Subsequent to any period of supervision, or if the department is not authorized to supervise the offender in the community, the county clerk may make a recommendation to the court that the offender's monthly payment schedule be modified so as to reflect a change in financial circumstances. If the county clerk sets the monthly payment amount, or if the department set the monthly payment amount and the department has subsequently turned the collection of the legal financial obligation over to the county clerk, the clerk may modify the monthly payment amount without the matter being returned to the court. *During the period of repayment, the county clerk may require the offender to report to the clerk for the purpose of reviewing the appropriateness of the collection schedule for the legal financial obligation. During this reporting, the offender is required under oath to respond truthfully and honestly to all questions concerning earning capabilities and the location and nature of all property or financial assets. The offender shall bring all documents requested by the county clerk in order to prepare the collection schedule.*

(Emphasis added.) This provision authorizes the clerk of the court to require the defendant to report to the clerk's office to provide periodic updates regarding his financial status, and here, that would include whether the defendant has any assets other than his Social Security disability benefits.[6] The statute also authorizes the clerk to set or alter a fee schedule in response to defendant's changing circumstances. *See also* RCW

---

[6] The concern expressed by the dissent below, that such reporting may become burdensome to the defendant, has yet to materialize in this case. *See Catling*, 2 Wn. App. 2d at 835 (Fearing, C.J., dissenting) (noting the "disruption in the offender's schedule" attendant with court monitoring and reports to the clerk concerning outstanding LFOs); *id.* at 845 (expressing concern that Catling "abides trapped in an enduring legal process" and "remains stuck in an ongoing, burdensome court process"). Should such reporting indeed become overly burdensome at some future date, such circumstance may be addressed by local court rule or by rule of this court. *Cf.* Title 15 Rules of Appellate Procedure (addressing indigency determinations and the rights of indigent parties).

9.94A.760(1); LAWS OF 2018, ch. 269, § 14(1) (authorizing the county clerk to "set the amount" of the defendant's LFO payment schedule where the trial court has not done so).[7]

In sum, only the crime victim fund assessment remains viable when HB 1783 is applied under *Ramirez*. We affirm the Court of Appeals' remedy as to the remaining LFO only.

## CONCLUSION

We reverse the Court of Appeals in part, holding that under *Ramirez*, because HB 1783 applies, the trial court erred in imposing a $200 criminal filing fee on Catling, who is indigent. Also, we remand to the sentencing court for a determination of whether Catling has previously provided a DNA sample; if he has, the trial court's imposition of the $100 DNA collection fee is error. Also, we affirm the imposition of the $500 crime victim fund assessment but remand to the trial court to revise the judgment and sentence and repayment order to comport with HB 1783 and to indicate that this LFO may not be satisfied out of any funds subject to the Social Security Act's antiattachment statute, 42 U.S.C. § 407(a). Accordingly, we affirm in part and reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

---

[7] As noted, the clerk can also make modification recommendations to the court based on the defendant's changed financial circumstances. RCW 9.94.760(8)(b); LAWS OF 2018, ch. 269, § 14(8)(b). Similarly, if the defendant is under supervision by the Department of Corrections, the department may monitor and make recommendations to the court reflecting the defendant's changed financial circumstances. RCW 9.94.760(8)(a); LAWS OF 2018, ch. 269, § 14(8)(a). And finally, if the defendant fails to pay an LFO, the court "may . . . modify the terms of payment" of the LFO (and "shall" so modify, if the defendant is indigent) if the court finds that the violation was not willful. RCW 9.94B.040(4)(f); LAWS OF 2018, ch. 269, § 15(4)(f).

_Madsen, J._

WE CONCUR:

_Fairhurst, C.J._

_Wiggins, J._

_Owens, J._

_Stephens, J._

15

No. 95794-1

GONZÁLEZ, J. (dissenting)—As a result of Jason Catling's debilitating condition, he cannot work and relies on Social Security disability income (SSDI) to meet his most basic needs. Catling qualified for disability income more than 10 years ago and, given his medical condition, will likely remain on it for the rest of his life. As the majority properly recognizes, a court may not order someone to pay legal financial obligations (LFOs) out of SSDI. Majority at 8; *City of Richland v. Wakefield*, 186 Wn.2d 596, 609, 380 P.3d 459 (2016); 42 U.S.C. § 407(a). The majority nonetheless concludes that a court may order that same individual to pay those same LFOs in a judgment and sentence. But a judgment and sentence is an order of the court, and when that order imposes an LFO on a person who has only SSDI, that order is unlawful. *See Wakefield*, 186 Wn.2d at 609. I respectfully dissent.

Plainly, it violates the antiattachment provision of the Social Security Act to order someone who has only SSDI to pay LFOs. *Wakefield*, 186 Wn.2d at 609; 42

U.S.C. § 407(a). I see no distinction between imposing such an LFO in a judgment and sentence and directing payment by separate order.

For individuals whose sole income is SSDI, the burdensome and coercive effects of LFOs will all too often result in SSDI being used to satisfy them. Individuals with LFOs are subject to the varying demands of the courts and clerks' offices for check-ins in order to determine the individuals' ability to pay their outstanding debts. RCW 9.94A.760(8)(b); *see also State v. Nason*, 168 Wn.2d 936, 942, 233 P.3d 848 (2010) (requiring person to pay LFOs or automatically report to jail). We can no longer ignore the fact that unpaid and unpayable LFOs can impose significant burdens on people with LFOs and their families. Tarra Simmons, *Transcending the Stigma of a Criminal Record: A Proposal to Reform State Bar Character and Fitness Evaluations*, 128 YALE L.J. FORUM 759, 761 (2019). This can have a lifetime effect. As recognized by the dissenting judge below, "[B]ecause of his disability, [Catling] abides trapped in an enduring legal process and he suffers other coercive consequences." *See State v. Catling*, 2 Wn. App. 2d 819, 845, 413 P.3d 27 (2018) (Fearing, C.J., dissenting).

Court clerks are often charged with collecting LFOs. These clerks have the authority to summon individuals with LFOs to report before them and share their financial situation, including responding under oath to questions of the clerk and providing sufficient documentation. RCW 9.94A.760(5), (8)(b). As Catling

stresses, "Nothing in this statute limits the number of times the clerk can summon the debtor to the clerk's office." Pet'r's Suppl. Br. at 11. This imposition is particularly burdensome for Catling, who has a debilitating condition that leaves him in chronic pain.

We should not ignore the heavy collateral consequences imposed by LFOs. LFOs act as "a lien on Catling's civil rights." *Catling*, 2 Wn. App. 2d at 845 (Fearing, C.J., dissenting). An individual cannot vacate their record until their LFO debt is satisfied and they receive a certificate of discharge, among other requirements.[1] Collateral consequences "appear in a variety of contexts and take a variety of forms, including time-limited or lifetime bans on employment opportunities, professional licenses, public benefits, public or private housing, and financial aid or educational opportunities." Simmons, 128 YALE L.J. FORUM at 761.

Our citizens have a constitutional right to vote. *See Brower v. State*, 137 Wn.2d 44, 68, 969 P.2d 42 (1998) (finding a fundamental right to vote under article I, section 19 of the Washington Constitution); *see also Reynolds v. Sims*, 377 U.S. 533, 561-62, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964) (finding a fundamental right to vote under the United States Constitution). This right is

---

[1] RCW 9.94A.640(1) (allowing anyone discharged under RCW 9.94A.637 to apply to vacate their record of conviction), .637(1) (requiring payment of LFOs as a condition of receiving a certificate of discharge).

limited as long as an order to pay LFOs is outstanding. RCW 29A.08.520. For those with a felony conviction, the right to vote cannot be permanently restored without a certificate of discharge or a certificate of restoration issued by the governor.[2] Compromising the constitutional right to vote "leav[es] the most vulnerable without a voice to change the system in which they are entangled." Simmons, 128 YALE L.J. FORUM at 760.

LFOs disproportionately affect disabled people who rely on SSDI. Without the ability to work, their LFOs will likely persist and continue to negatively affect their lives. *See id.* Individuals with lifelong disabilities that prevent them from working may never be able to pay off their LFOs, resulting in a lifetime of hearings about ability to pay LFOs and the negative consequences of having a criminal record. *See* RCW 9.94A.760(8)(b). "Moreover, while many people with disabilities already face barriers to employment, stable housing, and other necessary elements of economic security, adding a criminal record into the mix can pose additional obstacles that make living with a disability an even greater challenge." REBECCA VALLAS, CTR. FOR AM. PROGRESS, DISABLED BEHIND BARS: THE MASS INCARCERATION OF PEOPLE WITH DISABILITIES IN AMERICA'S JAILS AND

---

[2] RCW 29A.08.520(1) (provisional restoration of right to vote for those with felony conviction if not under authority of Department of Corrections), (2) (the provisional restoration of the right to vote can be revoked), (6) (right to vote may be permanently restored with, in relevant part, a certificate of discharge under RCW 9.94A.637 or a certificate of restoration by the governor under RCW 9.96.020).

PRISONS 3 (2016), https://www.americanprogress.org/wp-content/uploads/2016/07/18000151/2CriminalJusticeDisability-report.pdf [https://perma.cc/GJ89-T7M8].

"[A] debt must be capable of being paid, if it is not instead a lifetime [yoke] of servitude." Loretta E. Lynch, U.S. Attorney General, Remarks at White House Convening on Incarceration and Poverty (Dec. 3, 2015) (https://www.justice.gov/opa/speech/attorney-general-loretta-e-lynch-delivers-remarks-white-house-convening-incarceration-and [https://perma.cc/XQ3T-49PK]). The majority ignores the reality that an imposition of LFOs is an order to pay LFOs. I respectfully dissent.

González, J.