

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35759-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUSTIN A. WELKER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Justin Welker moved the trial court for remission or termination of legal financial obligations (LFOs) that remained payable under his criminal convictions dating back to 2006 and 2007. Although the superior court provided some relief, it ruled that a single crime victim penalty assessment remained payable and, while the LFO could not be collected from Mr. Welker's Social Security disability benefits, he would be required to report to the clerk's office annually on whether he was receiving income from other sources. He appeals.

Following the Supreme Court's decision in *State v. Catling*, 193 Wn.2d 252, 438 P.3d 1174 (2019) (*Catling* II), it is clear the trial court's order is valid. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In April 2017, at a time when Justin Welker owed amounts for LFOs imposed on him in 2006 and 2007, he moved the Spokane County Superior Court to remit his LFOs because he lacked the ability to pay, or alternatively, deem his LFOs uncollectable. He argued that since his only income was $616.25 a month from SSI[1] and food stamps, he did not have income with which to make payments toward his LFOs. He argued that *City of Richland v. Wakefield*, 186 Wn.2d 596, 380 P.3d 459 (2016), mandated the relief he was requesting.

The State argued that because Mr. Welker's LFO balance was for mandatory LFOs, the trial court lacked authority to reduce or waive it.

At the hearing on Mr. Welker's motion, he argued that the Social Security Act "prohibit[ed] courts from ordering defendants to pay LFOs if the person's only source of income is Social Security Disability." Report of Proceedings (June 2, 2017) at 2. The State agreed that it could not *collect* LFOs from a defendant whose only source of income was Social Security disability benefits, but argued remission was not available because Mr. Welker's remaining LFO balance was for mandatory LFOs. The State conceded that because SSI was then Mr. Welker's only income source, the trial court should suspend collection efforts.

---

[1] Supplemental Security Income.

2

The trial court took the matter under advisement, later issuing a memorandum opinion and order. The trial court's opinion concluded that *Wakefield* did not apply because it involved discretionary LFOs, while Mr. Welker's remaining LFOs were mandatory.[2] The trial court also noted that "at some time during the pendency Welker had the ability to make the payments and did, in fact, make payments toward his LFOs." Clerk's Papers (CP) at 86.

The trial court granted some relief to Mr. Welker, ordering the clerk's office to reverse the application of amounts earlier collected to discretionary LFOs that the court found could have been waived or reduced. It ordered the clerk to apply those amounts to mandatory LFOs, with the result that the LFOs imposed by Mr. Welker's 2006 judgment would be completely satisfied and he would only have a single mandatory LFO remaining from his 2007 judgment: the balance owed on the $500 crime victim penalty assessment. The trial court also suspended further collection efforts until the next annual review hearing, which would take place in April 2018.

The court's order stated that Mr. Welker would be required to demonstrate annually, in April, that he continues to qualify for suspension of collection efforts. The

---

[2] The trial court also distinguished *Wakefield* as involving a different type of Social Security disability benefit than the one at issue in *Wakefield*. In fact, Ms. Wakefield received SSI, the same type of benefit received by Mr. Welker. *Wakefield*, 186 Wn.2d at 603.

No. 35759-7-III
*State v. Welker*

court waived any outstanding *court* interest on Mr. Welker's mandatory LFOs. While it observed that the victim penalty assessment would continue to accrue interest until paid in full, it added that "[a]t the time of full payment of the principal, Welker can motion the Court to waive this interest also." CP at 90.

Mr. Welker moved for reconsideration, which was denied. He sought discretionary review by this court of the superior court's August 2017 opinion and order and its November 2017 denial of reconsideration.[3] Our commissioner determined that the two decisions were appealable as a matter of right.

At the time of oral argument of the appeal, this court's decision in *State v. Catling*, 2 Wn. App. 2d 819, 413 P.3d 27 (2018) (*Catling* I), had been accepted for review by the Washington Supreme Court. This court held in *Catling* I that "[t]he Constitution does not limit the ability of the states to impose financial obligations on convicted offenders; it only prohibits the enforced collection of financial obligations from those who cannot pay them." *Id.* at 823. It further held that while mandatory LFOs could not be enforced against a defendant's Social Security disability benefits, the Social Security anti-attachment statute, 42 U.S.C. § 407(a), did not operate to invalidate the LFOs, which could be satisfied out of any funds not subject to the statute. This court remanded the

---

[3] Mr. Welker's opening brief complains of actions taken in the superior court preceding these rulings on his remission request. Those actions were not timely appealed and will not be addressed.

4

case to the sentencing court "to amend its judgment and sentence to indicate that the LFOs may not be satisfied out of any funds subject to 42 U.S.C. § 407(a)." *Id.* at 826.

At oral argument the parties agreed that Mr. Welker's appeal should be stayed pending a decision from the Supreme Court in *Catling* II. Following issuance of the Supreme Court's decision, the stay was lifted.

ANALYSIS

The Supreme Court's decision in *Catling* II resolves the issues on appeal. The Supreme Court held in *Catling* II that this court's decision had

> appropriately applie[d] the plain language of 42 U.S.C. § 407(a). The remedy employed adheres to § 407(a)'s mandate that no Social Security disability benefits are available to satisfy a debt, while at the same time recognizes that nothing in § 407(a) immunizes criminal defendants receiving Social Security benefits from the imposition of mandatory LFOs—here, the crime victim fund assessment.

193 Wn.2d at 264.

The Supreme Court reversed this court in part because its own intervening decision in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), afforded Mr. Catling relief from the criminal filing fee and possibly the DNA[4] collection fee, which are no longer mandatory in all cases. *Catling* II, 193 Wn.2d at 257-59. As for the $500 crime victim penalty assessment however—the only LFO remaining payable by Mr. Welker— the Supreme Court recognized that it continued to be mandatory under RCW

---

[4] Deoxyribonucleic acid.

7.68.035(1)(a). *Id.* at 259. The court observed that in overhauling Washington's LFO provisions in 2018, the legislature was explicit about the mandatory character of the crime victim penalty assessment, stating, in House Bill 1783:

> "The crime victim penalty assessment under RCW 7.68.035 may not be reduced, revoked, or converted to community restitution hours."

*Id.* at 259-60 (quoting LAWS OF 2018, ch. 269, §§ 8(5), 13(3)(f)). Elsewhere, it stated,

> "An offender being indigent . . . is not grounds for failing to impose . . . the crime victim penalty assessment under RCW 7.68.035."

*Id.* at 260 (quoting LAWS OF 2018, ch. 269, § 14(1)).

The Supreme Court held that this court's remand order in *Catling* I "does not leave Catling in legal limbo, that is, with a mandatory LFO imposed but with no directive from the court on how to properly resolve it," explaining, "Washington's LFO provisions address this possibility, authorizing the county clerk to monitor a defendant's changing circumstances and to alter the defendant's payment schedule as needed." *Catling* II, at 265 (citing RCW 9.94A.760(8)(b)). It characterized RCW 9.94A.760(8)(b) as "authoriz[ing] the clerk of the court to require the defendant to report to the clerk's office to provide periodic updates regarding his financial status, and here, that would include whether the defendant has any assets other than his Social Security disability benefits." *Id.* It rejected the suggestion that the requirement that Mr. Catling report periodically was overly burdensome. *Id.* at n.6.

The trial court's order requiring Mr. Welker to present a financial declaration and any supporting documentation to the superior court LFO clerk annually in order to qualify for continuing suspension of collection is consistent with the procedure that the Supreme Court agreed could be required of Mr. Catling.

Mr. Welker requests an award of attorney fees under RCW 9.94A.7709, which provides for such an award to an LFO obligor if he or she prevails, in an action to enforce an LFO, where the obligee has acted in bad faith in connection with the proceeding in question. This appeal does not involve an action to enforce an LFO and Mr. Welker has not prevailed.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Korsmo, J.

7