IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>              Respondent,<br><br>      v.<br><br>MARSHALL ARTHUR<br>TRONSDAL,<br><br>              Appellant. | No. 81298-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — The State charged Marshall Arthur Tronsdal with first degree malicious mischief. Tronsdal pleaded guilty but challenged the imposition of restitution, arguing that extraordinary circumstances existed to lower the amount of restitution he owed. The sentencing court concluded that it lacked authority to do so. Tronsdal asserts that this was error. He further contends that the court erred when it failed to note in his judgment and sentence that payment of his legal financial obligations (LFOs) could not be satisfied from his Social Security benefits.

Because the court incorrectly believed it could not order restitution less than the amount that the State requested, the court abused its discretion. Thus, we remand for a new restitution hearing consistent with this opinion. Furthermore, the court must amend the judgment and sentence to reflect the requirement that Tronsdal's Social Security benefits cannot be used to satisfy the payment of his LFOs.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

On September 9, 2019, Tronsdal shot a BB gun into a window and glass door at Value Village, into the windows of three vehicles, and into the front door window of another individual's home. Tronsdal also activated the fire alarm at an apartment complex in Marysville, Washington. Damage to Value Village was estimated to be over $7,500, and damage to the apartment complex was estimated at $10,000.

The State charged Tronsdal with multiple counts of first degree malicious mischief. After his arrest, the court ordered a competency evaluation at the request of Tronsdal's counsel and the State. The evaluator concluded that Tronsdal had a mild intellectual disability and suffered from a substance abuse disorder. They found that Tronsdal suffered from a "neurodevelopmental disorder which can lead to impulsive behavior." The evaluator also asserted that Tronsdal might suffer from panic disorder and an unspecified depressive disorder. Nonetheless, the evaluator found that Tronsdal was competent to understand the legal proceedings and to assist in his own defense. Based on the evaluation, the court found that Tronsdal was competent.

Tronsdal pleaded guilty to one count of malicious mischief in exchange for the State agreeing not to charge separate counts for each victim. In the plea agreement, Tronsdal noted that he did not agree to the prosecutor's sentencing recommendation with regard to LFOs. Form language on his plea agreement stated that Tronsdal agreed to pay "restitution in full." In his statement of defendant on plea of guilty, Tronsdal indicated that "the judge will order me to

2

make restitution, unless extraordinary circumstances exist which make restitution inappropriate."

At sentencing, the court imposed the $500 victim penalty assessment and waived all other financial obligations, while reserving its restitution determination pending a restitution hearing.

Prior to the restitution hearing, Tronsdal filed a memorandum objecting to restitution and arguing that extraordinary circumstances made restitution inappropriate. Specifically, because of his static developmental disability and his dependence on Social Security income, Tronsdal requested "that the Court deny the request for restitution in this matter given extraordinary circumstances."

At the restitution hearing, the State and the court characterized Tronsdal's argument as revolving around his ability to pay. However, Tronsdal's counsel argued that, in addition to his reliance on Social Security benefits, his static mental health condition granted the court discretion to adjust restitution. The court found that it lacked "authority to consider [Tronsdal's] ability to pay[ and] reject[ed] the defense request that the Court find extraordinary circumstances." It ordered restitution to the apartment complex for repairing its fire system and to one of the car owners for her window repair costs. In the judgment and sentence, the court ordered restitution of $1,964.87, the amount that the State requested.

ANALYSIS

Restitution

Tronsdal asserts that the trial court abused its discretion when it failed to

3

recognize that it had the authority to find that Tronsdal's circumstances amounted to extraordinary circumstances. We agree.

*Breach of the Plea Agreement*

As an initial matter, the State contends that, because Tronsdal agreed to pay restitution in his plea agreement, he cannot challenge the court's order on appeal without breaching his plea agreement. We disagree.

A "plea agreement is a contract between the State and defendant, where the State agrees to recommend a specific sentence in exchange for the defendant's guilty plea." State v. Wiatt, 11 Wn. App. 2d 107, 111, 455 P.3d 1176 (2019), review denied, 195 Wn.2d 1019 (2020). If either party "breaches the plea agreement, the nonbreaching party may either rescind or specifically enforce it." Wiatt, 11 Wn. App. 2d at 111. "A reviewing court applies an objective standard to determine whether [a party] breached a plea agreement." State v. MacDonald, 183 Wn.2d 1, 8, 346 P.3d 748 (2015).

In the plea agreement, Tronsdal checked the box indicating that he did not agree to pay LFOs. Restitution is considered a specific form of LFO.[1] Accordingly, where Tronsdal indicated he did not agree to the payment of LFOs, his indication included that he did not agree to restitution. Furthermore, in his statement of defendant on plea of guilty, Tronsdal agreed to pay LFOs *unless* extraordinary circumstances existed. And he asserted that they did exist, which he was entitled to argue before the trial court. See State v. D.L.W., 14 Wn. App.

---

[1] The State admits this when it claims that "'[l]egal financial obligations' is a broader concept than 'restitution.'" And the plea agreement includes restitution in its list of LFOs.

2d 649, 654, 472 P.3d 356 (2020) (where the defendant agreed to pay "restitution in full," holding that he did not waive his right to counsel and his counsel "was entitled to argue in his best interest" that he should not pay the entire amount of restitution).  Tronsdal did not agree to pay restitution in full if extraordinary circumstances existed, and he did not breach his plea agreement.  Thus, we review the merits of Tronsdal's contention.

*Trial Court's Discretion*

Tronsdal asserts that the trial court had authority to impose restitution in an amount lower than that requested by the State because the court could conclude that extraordinary circumstances existed.  We agree that the court had discretion and that it erred when it concluded otherwise.

We will not disturb a trial court's order of restitution "on appeal absent abuse of discretion."  State v. Tobin, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007).  However, "[t]he extent of the trial court's discretion under [RCW 9.94A.753] is a question of statutory interpretation, which we review de novo."  D.L.W., 14 Wn. App. 2d at 655.

A court must order restitution "whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property."  RCW 9.94A.753(5).  However, the court has discretion to determine whether "extraordinary circumstances exist which make restitution inappropriate."  RCW 9.94A.753(5).  "[T]he plain language of the restitution statute allows the trial judge to order restitution ranging from zero in extraordinary circumstances, up to double the offender's gain or the victim's loss."  Tobin, 161 Wn.2d at 524.

Here, the apartment complex and one of the vehicle owners requested restitution. Because the statute's plain language provides the trial court with discretion to determine the amount of restitution when not requested by the crime victim's compensation program and because the restitution statute invested the trial court with discretion to order restitution from zero to twice the victims' losses, the trial court abused its discretion. Specifically, it applied an incorrect legal analysis when it concluded that it lacked authority to reduce the amount of restitution owed. See Tobin, 161 Wn.2d at 523 ("[A]pplication of an incorrect legal analysis or other error of law can constitute abuse of discretion."). We do not determine whether Tronsdal's developmental disabilities and his dependency on Social Security benefits constitute extraordinary circumstances.[2] Rather, we leave that to the trial court's discretion to determine on remand.[3]

The State disagrees and asserts that because a mental disorder cannot be "by itself a 'substantial and compelling reason' justifying a lenient sentence, it

---

[2] The State contends that Tronsdal is essentially arguing that his inability to pay constitutes extraordinary circumstances. But Tronsdal specified below and on appeal that his development disability *and* his reliance on Social Security income constitute extraordinary circumstances.

[3] The State unpersuasively attempts to distinguish State v. Painter, No. 78104-9-I (Wash. Ct. App. June 10, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/781049.pdf. There, we held that the trial court abused its discretion when it incorrectly believed it lacked authority to adjust restitution downwards for restitution not requested by the crime victims' compensation program. Painter, No. 78104-9-I, slip op. at 5-6. We concluded that the court could consider the defendant's mental disability and ability to pay on remand, but we made no determination as to whether those issues constituted extraordinary circumstances. Painter, No. 78104-9-I, slip op. at 6. We follow the holding of Painter and conclude it is within the trial court's discretion to determine whether the circumstances in Tronsdal's case constitute extraordinary circumstances.

6

should likewise not be an 'extraordinary circumstance' that relieves the defendant of the duty to pay restitution." The State provides no legal authority indicating that a cognitive disability cannot constitute an extraordinary circumstance. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). And we find no persuasive reason to conclude that it cannot. Furthermore, it was error for the trial court to apply the wrong legal standard, i.e., that it did not have discretion, and on this fact alone, we can and do remand for the trial court to determine restitution in light of its discretion.

Social Security Benefits

Tronsdal asserts that the trial court erred when it failed to limit the State's ability to collect LFOs from his Social Security disability benefits, his only source of income. We agree.

As an initial matter, the State contends that Tronsdal cannot raise this issue for the first time on appeal. At sentencing, Tronsdal did not object to the court's failure to indicate the Social Security issue. And "[i]n general, the failure to raise an issue before a superior court waives the issue on appeal under RAP 2.5(a)." State v. Glover, 4 Wn. App. 2d 690, 693, 423 P.3d 290 (2018). However, we may exercise our discretion to hear an issue "'to promote justice and facilitate the decision of cases on the merits.'" Glover, 4 Wn. App. 2d at 693 (quoting RAP 1.2(a)). Thus, although Tronsdal failed to object below, we exercise our discretion here and review the merits of his contention.

The Social Security Act's antiattachment statute, 42 U.S.C. § 407(a), states that "none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process." That is, "no Social Security disability benefits are available to satisfy a debt," including Tronsdal's mandatory LFOs. See State v. Catling, 193 Wn.2d 252, 264, 438 P.3d 1174 (2019) (concluding that the defendant was required to pay the $500 victim fund assessment but that the debt could not be satisfied from their Social Security disability benefits). And where the court failed to note that Social Security disability benefits cannot satisfy a defendant's LFO debts, we consistently have remanded to the trial court to amend the judgment and sentence accordingly. See Catling, 193 Wn.2d at 266 ("remand[ing] to the trial court to revise the judgment and sentence and repayment order . . . to indicate that [the] LFO may not be satisfied out of any funds subject to the Social Security Act's antiattachment statute"). Thus, we agree that we must remand for the trial court to amend the judgment and sentence accordingly.[4]

For the foregoing reasons, we remand to the sentencing court to consider whether extraordinary circumstances exist to impose restitution less than the amount that the State requested and to modify the judgment and sentence to reflect the requirement that Tronsdal's Social Security benefits cannot be used to

---

[4] The State asserts that "it may make little difference" whether the judgment and sentence reflects the issue because the supervising entity can modify Tronsdal's payments and the court cannot sanction him for failing to make payments towards LFOs when his sole source of income is his Social Security benefits. The State's argument is unsupported for a number of reasons and ignores the very real barriers indigent litigants face to access the court system and assert their rights.

satisfy his LFO debt.

WE CONCUR: