IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 82086-9-I |
| Respondent, | DIVISION ONE |
| v. | |
| MCDONALD, GUSTAVO JEREMY, DOB: 06/20/1946, | UNPUBLISHED OPINION |
| Appellant. | |

PER CURIAM — A jury found Gustavo Jeremy McDonald guilty of rape of a child in the first degree based on an offense committed against his step-great-granddaughter. As a part of his judgment and sentence, the court imposed community custody condition 17 that orders him to neither "date women nor form relationships with families who have minor children, as directed by the supervising Community Corrections Officer."

McDonald contends that the phrase "form relationships with families" is unconstitutionally vague because it is not sufficiently clear what type of contact or interaction is prohibited. He cites an unpublished opinion from Division Two of this court addressing a similar condition, State v. Robinett, No. 50653-0-II (Wash Ct. App. Jan. 15, 2019) (unpublished).[1] That court stated:

> Unlike the term "dating relationship," which is statutorily defined in RCW 26.50.010(2) and was held by the Nguyen[2] court to be

---

[1] Https://www.courts.wa.gov/opinions/pdf/D2%2050653-0-II%20Unpublished%20Opinion.pdf.

[2] State v. Nguyen, 191 Wn.2d 671, 425 P.3d 847 (2018).

Citations and pin cites are based on the Westlaw online version of the cited material.

sufficiently definite to withstand a vagueness challenge, people of
ordinary intelligence, including corrections officers charged with
enforcing this condition, could reasonably disagree as to when a
person forms a relationship with another.

Therefore, the condition lacks the definiteness needed to
allow ordinary people to understand what conduct is proscribed,
and it permits arbitrary enforcement by granting corrections officers
broad discretion to determine when an encounter between [the
defendant] and another individual has crossed the obscure
threshold of forming a relationship.

Robinett, No. 50653-0-II, slip op. at 9.

The State concedes that the phrase "form relationships with families" is
unconstitutionally vague and should be stricken. The concession is well taken.
We agree and remand to the trial court to modify condition 17.

Next, McDonald challenges community custody supervision fees the court
imposed despite his indigence.

Supervision fees are governed by RCW 9.94A.703(2)(d), which provides
that "[u]nless waived by the court, as part of a term of community custody, the
court shall order an offender to . . . [p]ay supervision fees as determined by the
[D]epartment [of Corrections]." Supervision fees are not a "'cost'" under RCW
10.01.160(3), which may not be imposed against an indigent defendant. See
State v. Spaulding, 15 Wn. App. 2d 526, 536-37, 476 P.3d 205 (2020). However,
because supervision fees are waivable, they are discretionary. RCW
9.94A.703(2)(d); State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020).

The sentencing court initially indicated that in addition to mandatory legal
financial obligations (LFOs), it would impose a criminal filing fee. Defense
counsel asked the court to find McDonald, who was 74 years old at the time of
sentencing, indigent because he "ha[d] not worked for a long time" and would not

be able to work going forward.  The court accepted counsel's representation and imposed only mandatory LFOs, consistent with its finding of indigence.  The court stated, "[T]o the extent there may be a restitution order entered in this case, I would prefer your client's resources go to satisfying that order as opposed to a court fine."

The requirement that McDonald "pay supervision fees as determined by" the Department of Corrections is buried in a lengthy paragraph of the prewritten judgment and sentence form, in a different section of the judgment from the other LFOs.  The record indicates that the court inadvertently imposed supervision fees and, in these circumstances, it is appropriate for us to remand to strike the condition of community custody requiring the fees.  State v. Peña Salvador, 17 Wn. App. 2d 769, 791-92, 487 P.3d 923 (citing Dillon, 12 Wn. App. 2d at 152), review denied, 495 P.3d 844 (2021).[3]

In addition, under federal law, Social Security benefits cannot be used to pay legal financial obligations.  See 42 U.S.C. § 407(a); State v. Catling, 193 Wn.2d 252, 260, 438 P.3d 1174 (2019).  The trial court should also clarify on remand that McDonald's LFOs cannot be satisfied through federal Social Security income.

Finally, McDonald seeks correction of a scrivener's error in the judgment and sentence as to the date of the crime.  The judgment and sentence reflects

---

[3] The State contends the written judgment and sentence overrides any contradictory oral pronouncement and the court's failure to address supervision fees does not indicate intent to waive them.  Nevertheless, the State suggests that because trial counsel performed deficiently by failing to specifically ask the court to waive supervision fees based on indigence, McDonald should be able to raise the issue on remand.  But we do not reach the issue of ineffective assistance because, as explained, it appears to us that the court intended to waive all nonmandatory fees.

3

that the crime took place between August 9, 2007 and October 1, 2015. Both the third amended information and the jury instructions identify August 9, 2010 as the beginning of the date range for the crime. On remand, the court should correct the date of the crime to conform to the information and instructions. See CrR 7.8(a); State v. Makekau, 194 Wn. App. 407, 420-21, 378 P.3d 577 (2016) (remedy for scrivener's error in a judgment and sentence is remand to the trial court for correction).

Accordingly, we remand for the trial court to (1) modify community custody condition 17 to eliminate the phrase "nor form relationships with families," (2) strike community custody supervision fees, (3) clarify that McDonald's LFOs cannot be satisfied through federal Social Security income, and (4) correct the error in the judgment and sentence as to the date of the crime, replacing the start of the date range of August 9, 2007 with August 9, 2010.

WE CONCUR: