# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. BRENT CHARLES REAMER, Appellant. | DIVISION ONE<br><br>No. 78447-1-I (consol. with No. 78506-1-I)<br><br>UNPUBLISHED OPINION<br><br>FILED: July 29, 2019 |

DWYER, J. — Following his conviction for burglary in the second degree, Brent Reamer appeals, raising constitutional challenges to two community custody conditions and additional challenges to certain legal financial obligations imposed by the sentencing court. We affirm one of the challenged community custody conditions, but remand to the trial court to strike or clarify the other, as well as to strike the challenged legal financial obligations.

I

In late 2016, Brent Reamer committed a series of burglaries at an array of businesses in Lynnwood and Mill Creek. In two separate criminal actions, he was charged with, and pled guilty to, a total of 10 counts of burglary in the second degree. Reamer admitted at his sentencing hearing that his criminal behavior coincided with the use of heroin and requested that a Drug Offender

Sentencing Alternative (DOSA) be imposed. The trial court imposed a prison-based DOSA pursuant to which Reamer would spend a total of 29.75 months in prison, followed by 29.75 months of community custody.

In addition to standard conditions, the court imposed the following additional conditions as part of Reamer's community custody:

1. Obey all municipal, county, state, tribal and federal laws.

2. Do not possess or consume alcohol and do not frequent establishments where alcohol is the chief commodity for sale.

3. Do not possess or consume controlled substances.

4. Do not associate with known users or sellers of illegal drugs.

5. Do not possess drug paraphernalia.

6. Stay out of drug areas, as defined in writing by the supervising Community Corrections Officer.

7. Participate in offense related counseling programs, to include substance abuse/chemical dependency treatment and Department of Corrections sponsored offender groups, as directed by the supervising Community Corrections Officer.

8. Participate in substance abuse treatment as directed by the supervising Community Corrections Officer.

9. Participate in all urinalysis, breath tests, and compliance polygraph examinations as directed by the supervising Community Corrections Officer.

10. Your residence, living arrangements and employment must be approved by the supervising Community Corrections Officer.

11. You must consent to DOC [Department of Corrections] home visits to monitor your compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of the residence in which you live or have exclusive/joint control/access.

12. Court Ordered Treatment: If any court orders mental health or chemical dependency treatment, the defendant must notify DOC

2

and the defendant must release treatment information to DOC for the duration of incarceration and supervision. RCW 9.94A.562.

At the sentencing hearing, neither the State nor Reamer objected to any of these conditions. The court's sentencing orders under both causes also imposed upon Reamer a $200 criminal filing fee, a $100 DNA collection fee, and costs related to future community custody supervision to be determined by the Department of Corrections, as well as interest on these obligations.

Reamer now appeals. He contends that two of the additional conditions applicable to the community custody portion of his sentence are unconstitutionally vague and that the aforementioned legal financial obligations (LFOs) should be stricken. Because the State concedes that one of the additional community custody conditions is unconstitutionally vague, and because changes in the law mandate the striking of certain of the LFOs, we reverse portions of the sentence.

II

Reamer first challenges the fourth additional community custody condition listed above—that he "not associate with known users or sellers of illegal drugs." The condition is unconstitutionally vague, he asserts, both because it impedes on his First Amendment right to freedom of association and because it does not sufficiently define the class of people that he must avoid, rendering it vague in violation of his right of due process. We disagree with both contentions.

A defendant may assert a constitutional challenge to a community custody condition for the first time on appeal. State v. Bahl, 164 Wn.2d 739, 744-45, 193 P.3d 678 (2008). Community custody conditions are reviewed under an abuse of

discretion standard and may be reversed only if they are manifestly unreasonable. State v. Hai Minh Nguyen, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). However, the imposition of an unconstitutional condition is always manifestly unreasonable. State v. Sanchez Valencia, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010). The requirement that Reamer not associate with known users or sellers of drugs is both constitutional and eminently reasonable.

A

We begin by addressing Reamer's First Amendment challenge, noting that limitations on fundamental rights are permissible provided that they are imposed sensitively. State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). An offender's freedom of association may be restricted if reasonably necessary to accomplish the essential needs of the state and public order. Riley, 121 Wn.2d at 37-38. In State v. Hearn, 131 Wn. App. 601, 128 P.3d 139 (2006), a defendant argued that a community custody condition demanding that she refrain from associating with known drug offenders violated her freedom of association. Division Three affirmed the imposition of the challenged community custody condition, noting that "[r]ecurring illegal drug use is a problem that logically can be discouraged by limiting contact with other known drug offenders." Hearn, 131 Wn. App. at 609.

Similarly, the sentencing court in this case found, based upon Brent Reamer's own admissions, that Reamer suffered from a chemical dependency condition that contributed to his criminal behavior:

> THE COURT: . . . I mean, when you're using, you're out
> stealing, and that's very clear; right?

4

MR. REAMER: Yes.

THE COURT: . . . And I'd say that despite your record and your number of convictions I'm pretty confident what I have is somebody who is a drug addict who commits crimes when they're on drugs, based on your two spurts of time and based on what you steal and how you steal it. So I'm pretty confident that if we can keep you clean and sober that you will not commit crimes.

MR. REAMER: Definitely.

Further, Reamer admitted that this dependency was furthered through his association with other users, and that he viewed disassociation from these users as a critical step toward recovery:

THE COURT: Okay. So do you hang out with people who use?

MR. REAMER: No, not anymore.

THE COURT: When did you stop doing that? Your attorney doesn't know. You know.

MR. REAMER: It had to have been about a year ago.

THE COURT: Why did you do that?

MR. REAMER: I went on Suboxin to get off heroin. And, then, after that, I deleted my Facebook and all that stuff to make sure that people couldn't contact me and I couldn't contact them.

THE COURT: Why did you decide to do that?

MR. REAMER: To protect myself so I don't get back on heroin.

The essential needs of the state and public order include the prevention of burglaries. Reamer's own statements make clear that his commission of burglaries stemmed from his drug abuse, and that such abuse came about, at

5

least in part, as a result of his association with others who used drugs. Thus, the court acted within its discretion in limiting Reamer's freedom of association.

B

The guaranty of due process, contained in the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, precludes vague laws. State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). Due process requires that citizens have fair warning of conduct that is proscribed. City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795 P.2d 693 (1990). A statute is unconstitutionally vague if (1) it does not define the criminal offense with sufficient definiteness that an ordinary person can understand what conduct is proscribed, or (2) does not provide ascertainable standards of guilt to protect against arbitrary enforcement. Kolender v. Lawson, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); Bahl, 164 Wn.2d at 752-53.

If persons of ordinary intelligence are able to understand what the law proscribes, notwithstanding some possible areas of disagreement, the law is sufficiently definite. Bahl, 164 Wn.2d at 754. A community custody condition is not unconstitutionally vague simply because a person cannot predict with complete certainty the exact point at which his or her actions would be classified as prohibited conduct. Sanchez Valencia, 169 Wn.2d at 793.

Very recently, we considered and rejected the argument that Reamer makes regarding the alleged vagueness of the same community custody

condition. In re Pers. Restraint of Brettell, 6 Wn. App. 2d 161, 430 P.3d 677
(2018). In that decision, we stated:

> Brettell claims that the word "known" makes the condition
> vague because it does not state who must "know" that a particular
> person used or sold illegal drugs before he must avoid that person.
> Brettell does not cite any cases where "known," when used *in a
> community custody condition*, refers to the knowledge of anyone
> other than the offender.

> In United States v. Vega, [545 F.3d 743, 746 (9th Cir. 2008),]
> the Ninth Circuit rejected a vagueness challenge to a condition for
> supervised release that stated "'defendant shall not associate with
> any member of any criminal street gang.'" Consistent with what the
> court described as "well-established jurisprudence," it presumed
> that the condition prohibited the defendant's knowing misconduct.
> The Vega court noted that while constitutional, the condition would
> be clearer if it included the term "known." This would have limited
> the condition's reach to people known by the defendant to be gang
> members. [545 F.3d at 749-50.] Brettell does not present legal
> authority contrary to Vega or otherwise show how the term "known"
> itself makes the condition vague.

> Brettell also asserts that the condition is unclear because the
> term "users and sellers" might refer to people's actions in the
> distant past and/or those they are no longer engaged in. A court
> interprets an undefined term in a community custody condition
> based on its plain meaning, which includes the dictionary
> definition." The definition of "user" is "one that uses; specif[ically] :
> a person who uses alcoholic beverages or narcotics." The
> definition of "use" is "the act or practice of using something." The
> definition of "seller" is "one that offers for sale." Thus, the terms
> "users or sellers" refer to ongoing current activity. Like the terms
> "using, possessing, or dealing" found constitutional in State v.
> Llamas-Villa, [67 Wn. App. 448, 456, 836 P.2d 239 (1992),] they
> effectively notify a person of ordinary intelligence what behavior is
> prohibited.

> Brettell also contends that the term "illegal drugs" reinforces
> the vagueness of "known." With some states' decriminalization of
> "recreational marijuana, it does not provide fair notice to write
> conditions in terms of 'illegal drugs.'" Washington no longer
> criminalizes the use and possession of limited quantities of
> marijuana. But this conduct remains a federal offense, governed by
> the Controlled Substances Act (CSA). The CSA preempts state

law, even for marijuana wholly grown and distributed intrastate. The complication of different state and federal drug enforcement policies does not excuse a person from knowing that for marijuana, it is still "illegal." The mere fact that only the federal government prohibits recreational marijuana use and possession does not make the term "illegal drugs" vague as applied to marijuana.

Brettell, 6 Wn. App. 2d at 169-171 (emphasis added) (footnotes omitted).

Perhaps understandably, given that our reasoning in Brettell eviscerates the viability of Reamer's vagueness challenge, Reamer contends that Brettell was wrongly decided. In support of this, he states that the Brettell court did not consider the precedent of City of Spokane v. Neff, 152 Wn.2d 85, 93 P.3d 158 (2004). In that case, our Supreme Court held that a municipal anti-prostitution ordinance was unconstitutionally vague owing to its omission of a definition for the term "known prostitute." Neff, 152 Wn.2d at 91.

However, the difference between an ordinance of general applicability and a community custody condition of specific applicability is not to be overlooked. Making the exact same challenge to the same community condition as that imposed in Brettell, Reamer, like Brettell, fails to "cite to any cases where 'known,' when used in a community custody condition, refers to the knowledge of anyone other than the offender." Brettell, 6 Wn. App. 2d at 169. We consider Brettell well-decided and dispositive on this issue.

III

Reamer also challenges as unconstitutionally vague the community custody condition requiring that he "stay out of drug areas, as defined in writing by the supervising Community Corrections Officer." The State concedes that this condition is unconstitutional in light of Irwin, 191 Wn. App. at 655, in which we

8

held that a community custody condition mandating the defendant absent himself from areas where minor "'children are known to congregate'" was unconstitutionally vague. We accept the State's concession. On remand, the condition should be either clarified or stricken from the sentencing order.

IV

Finally, Reamer contests the imposition of several LFOs. These obligations include both $200 criminal filing fees, a $100 DNA collection fee, future expenses related to his community supervision, and interest on the nonrestitution portion of his LFOs. Recent changes in the law have relieved the burden of such LFOs from indigent defendants, see, e.g., RCW 10.01.160(3); RCW 36.18.020(2)(h); or in the case of DNA collection, eliminated them where they are superfluous, RCW 43.43.7541. Reamer is an indigent defendant.

The statute in effect at the time of Reamer's sentencing, former RCW 36.18.020(2)(h), provided for the mandatory assessment of a $200 filing fee upon a criminal's conviction or plea of guilty. This was amended effective June 7, 2018, to exclude indigent defendants from its scope. The amendment applies prospectively to defendants with appeals pending at the time of the statute's enactment. State v. Ramirez, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). Reamer asks that we remand to the trial court for it to strike each of the filing fee cost assessments. The State concedes that this is necessary.

Reamer next challenges the trial court's decision to impose a $100 DNA collection fee under *both* of his cause numbers. The fee should be stricken, Reamer avers, because only one such fee can be imposed. A legislative

9

amendment to RCW 43.43.7541, effective June 7, 2018, requires imposition of the fee "unless the state has previously collected the offender's DNA as a result of a prior conviction." LAWS OF 2018, ch. 269, § 18. Citing to Ramirez, Reamer further notes that the amendment applies to defendants with appeals pending at the time of enactment. 191 Wn.2d at 747. The State acknowledges the error in light of the legislative purpose of avoiding redundant DNA collection fees. It concedes that the second fee payment requirement should be eliminated on remand.

Reamer next contends that the requirement that he pay the costs of community custody supervision be stricken. The State opposes this request.

The trial court imposed, as a condition of community custody, the requirement that Reamer "pay supervision fees as determined by DOC." RCW 9.94A.703(2) authorizes the court to waive these fees, indicating that they, too, are a discretionary legal financial obligation of the type that may no longer be imposed on indigent defendants pursuant to the most recent iteration of RCW 10.01.160(3). Division Two endorsed this view in State v. Lundstrom, 6 Wn. App. 2d 388, 396 n. 3, 429 P.3d 1116 (2018), review denied, 193 Wn.2d 1007 (2019). We find that court's analysis persuasive. Accordingly, we direct that the trial court strike this payment obligation on remand.

Finally, Reamer contends that the statement in the judgment and sentence imposing interest on his nonrestitution LFOs is not authorized by statute. This is correct in light of amendments to RCW 10.82.090(1), which now states that "[a]s of June 7, 2018, no interest shall accrue on nonrestitution legal

financial obligations." Reamer asks that, on remand, the judgment and sentence be modified to reflect that no interest shall accrue on such obligations after June 7, 2018.

The State counters that, because the statute specifically provides that interest will not accrue after that date, the relief Reamer requests is "built into the statute," and that to direct the trial court to amend the judgment and sentence is superfluous. However, the Supreme Court adopted a different view in State v. Catling, 193 Wn.2d 252, 438 P.3d 1174 (2019). Therein, the Supreme Court noted that the new version of the statute "also eliminated interest accrual on all LFOs except restitution" and directed the trial court to revise the judgment and sentence at issue to "eliminate such interest on any qualifying remaining LFOs." Catling, 193 Wn.2d at 259 n.5. Thus, on remand, we direct that Reamer's sentencing court do the same.

Affirmed in part and reversed in part.

WE CONCUR:

Mann, A.C.J.

11